## COLLIER, Governor &c., vs. FRIERSON et al.

1. The State constitution can only be changed by the people in convention, or in the mode prescribed in the instrument itself; and if the latter mode is adopted, every requisition of the constitution must be observed.

2. The amendment of the constitution, submitted to the vote of the people by the General Assembly of 1844—5, proposing *biennial* (instead of *annual*) elections of the State Treasurer and Comptroller, not having been properly ratified at the next session of the General Assembly, those officers hold their offices for the term of one year only.

3. The General Assembly of 1844—5 having proposed several amendments of

the constitution, joint resolutions were adopted at the next succeeding session, reciting in the preamble that, "whereas the General Assembly of this State, at the last session of the same, duly submitted to the people of said State proposed amendments to the constitution ; and whereas the people of this State, in manner and form as provided by the constitution, have accepted the said amendments, which are in words and figures following" &c., setting them all out except one, which was entirely omitted ; and the usual clause was then added, enacting "that the aforesaid amendments to the constitution, proposed as aforesaid, and accepted by the people as aforesaid, be ratified, and that the same, from and after the passage of this resolution, be and form a part of the constitution of the State of Alabama": *Held*, that the amendment which was entirely omitted from the ratifying resolutions, was not constitutionally ratified, and therefore failed.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. GEORGE D, SHORTRIDGE.

THIS was an action of COVENANT, in the name of Henry W. Collier, Governor of the State of Alabama, against Samuel G. Frierson and his sureties on his official bond as State Treasurer ; the declaration assigning seven separate breaches. The defendants craved oyer of the bond, and demurred to the whole declaration, and to each breach separately, "in short by consent." The court sustained the demurrer, and its judgment is now assigned for error. The facts necessary to an understanding of the points presented by the demurrer, may be gathered from the opinion and briefs.

ORMOND & NICOLSON, for the appellant :

Covenant will lie upon this bond, under our practice.— Watts v. Shepherd, 2 Ala. 425 ; Hill v. Rushing & Wood, 4 *ib.* 212 ; Clay's Digest 330 §§ 95, 96.

The second and sixth breaches are well assigned, because the law requires that the treasurer, before entering upon the duties of his office, shall take an oath, and give his bond.— He is not treasurer until he does this : these prerequisites are necessary to his induction into office : the election does not make the officer, without the bond. He is sued on his bond as treasurer ; and whether this money was in his hands at the time of the execution of the bond, is mere matter of proof. ¦Frierson not being treasurer until his bond was given, it was useless to have averred a mere legal conclusion. It

is averred that he had the money in his hands while he was treasurer ; and he was not treasurer until his bond was executed and approved.

There are two modes of altering the organic law : one is by convention, and thus making a new constitution ; the other is by making amendments in the mode therein pointed out. In either case, it is the act of the people. The Legislature, *pro hoc vice*, is a convention, both in proposing and in ratifying the act of the people. This is shown by the clear difference in the number of votes required to effectuate the object. It is not necessary that the Governor should approve the act, for the vote required to pass it overrides the executive veto, if it were attempted to be interposed.— Such action is the very highest power known in government; and when the organic body have declared that certain propositions shall be laid before the people, that body is alone the judge of the mode and manner in which they shall get before the people. If the propositions were duly published, and notice given of the intended changes, then, surely, this high power had the right to prescribe the mode in which it should be carried out. If, in their opinion, this could be attained by simply asking two questions, they are the judges of the propriety of the mode, and no one has the right to impugn it. The argument, then, that the people have not voted on changing the twenty-third section of the fourth article, is fallacious. If the directions of the Legislature were pursued, it is sufficient.

We contend, further, that there were, in fact, but two amendments. The Legislature only put two questions, to both of which the voter might say " yea" or " nay," or " yea" as to one, and " nay" as to the other ; but as to the six sections in which the word "annual" was proposed to be changed to "biennial," he could only give the same answer to all. The Legislature was the exclusive judge as to whether the object could be thus accomplished.

We come now to consider the acts themselves. There can be no question, that all the clauses where the word "annual" occurs, were inserted in the original proposition, and, if the above argument is correct, they were voted on by the people. The act of ratification creates the only doubt in regard

to the matter; because the twenty-third section of the fourth article is not contained in the enumeration, it is contended that the vote of the people is not ratified. This enumeration is nothing more than an improper quotation of a former law: it evidently intended to quote that law, but misquoted it.—Can this mere mistake or omission prevail against the clear and explicit language of the preamble and enacting clause of the act of ratification? The criticism to which the enacting clause has been submitted, distorts its meaning; for, if the Legislature, by this clause, meant to say that the people only voted for the propositions contained in the recital of the ratifying act, then it recites what is not true, if the General Assembly had the right, as above contended, to declare how all the proposed changes should be effected by a response to two simple questions. The argument involves the absurd conclusion, that this court, at most but a co-ordinate department of the State, will be compelled to say that the Legislature has certified and ratified a positive untruth.

It is clear that the courts have the right to judge of the constitutionality of all laws; but this does not involve the right on their part to prescribe to the Legislature rules for the conduct of business coming within the purview of its legitimate functions. When the Legislatue has declared an act done, which it alone has the power to do, it does not become the Judiciary to gainsay it. "It is to be lamented," said a great statesman, " that men are compelled to examine into the foundation of government"; and it would be lamentable indeed, if all the machinery and minute action of legislation had to be submitted to the stern criticism of a judicial tribunal. If all the elements necessary to the perfection of a law had, in every case, to be proved, it would be a matter of impossibility in many cases,

It is said, that the constitution required the act changing this twenty-third section to be read on three several days, and, as the act itself does not contain this section, therefore it has not been changed. But the act says, that all " the amendments proposed as aforesaid," are ratified. How could they be ratified, without being read? The "*ipse dixit*" of the Legislature is enough, and cannot be inquired into. Why not call for proof that the proposed amendments

were duly published in print, as prescribed by the constitution? It could never be tolerated that the legislation of the county should be submitted to such a merciless inquisition.

R. H. SMITH, *contra:*

Frierson was elected treasurer in January, 1846, and gave bond in February, 1846, on which bond this suit is brought. The declaration seeks to deduce liabilities on account of moneys received by him more than one year from the beginning of his term. To this a demurrer is interposed, raising the question, whether that bond is liable for a default committed more than one year from his election.

The following propositions are undeniable: 1. That the sureties to the bond are only liable for defaults done from the date of the bond up to the expiration of the constitutional term of office.—9 Wheat. 720; 7 How. Miss. R. 543; 2 B. & A. 431; 2 M. & S. 363; 3 *ib.* 502; 12 Wheat. 505; 4 Hen. & Mun. 208; 2 Metcalf 540; 8 Mass. 275; 2 Saunders 414, and notes; 2 M. & W. 484. 2. That the plaintiff having sued the defendants jointly, must recover jointly, or not at all. This has been frequently so decided by this court.

What is the tenure of office of the State Treasurer? Prior to the 8th of January, 1846, he was required to be elected annually, (Const. Ala., Art. IV § 23,) and this made the tenure of his office but one year. The mode of amending this or any other clause of the constitution, is found in Clay's Digest XL. Has the tenure been chaged in the mode and manner thus proscribed? The requisitions to a change are: 1st, a proposal to amend by two thirds of the General Assembly; 2ndly, and above all, an approving vote by the people; 3rdly, a ratification by two thirds of the succeeding Legislature; and, 4thly, these legislative steps are valid, provided the amendments (not the resolutions) shall have been read, at each session, on three several days.

Suppose that every other requisite be granted to have been performed. The comfirmatory act of 1846 recites, by preamble, that certain amendments had been proposed and accepted. Suppose it had then said, Be it therefore enacted, that the proposed amendments, made as aforesaid, and

accepted by the people as aforesaid, be ratified, (and this is, in effect, what it does say,) could it be pretended that the amendments themselves had been read three times, on three several days? At the third reading, the thing read passed, and came forth the embodiment of what was read : that thing was the resolution, which passed. In the case put, a description of something which the previous Legislature had passed was read. by which it might be known what the previous Legislature had acted on ; and this description might suffice to let us know what the Legislature referred to, and would fulfil the demands of the constitution, if certainty of description was the test. But the proviso, on which the validity of the proposed change rests, is, that the amendments themselves, not a description of them, be read on three several days. Unless reading a description of a thing means reading the thing itself, the proposed amendments were not read as required by the constitution ; for there is a total omission to put in the paper passed one word in reference to the twenty-third section of the fourth article.— Why this silence, will appear more fully in the sequel : the ratifying Legislature did not put it in, simply because the preliminary requisites had not been performed.

The people, in whom resides the vital power in reference to organic law, could only vote when polls were opened, and questions proposed, and a mode given by which to declare themselves. The constitution itself requires, that, when an amendment is proposed, the returning officers shall open a poll for, and make due return of, all those who have voted on the proposed amendment., It is silent as to the manner in which the question shall be put or answered, or the answer taken or certified. These particulars, necessary to the enjoyment of the right, are left to ordinary legislation, and without such the right cannot be exercised. The Legislature prescribes this law; that law omitted all questions as to the Treasurer's tenure of office. None, then, was asked: no answer was given, and, of course, the people never voted on that question. The Legislature must not only propose a change, but must do it in such a manner that the proposal can be answered. In this case, it could not be answered, and it was not. The question was asked, Are you in favor

8

of biennial sessions. The people answered in the affirm-
ative, and so answered all they were asked, but nothing
more. The Legislature, then, never proposed the amend-
ment in an answerable shape; the people never voted on it;
and the subsequent Legislature, seeing this, did not embrace
this change in their resolutions of confirmation. The omis-
sion having been made in the questions propounded. the
subsequent omissions were the result of necessity.

The only arguments left in favor of the change, are : 1st,
that the change from annual to biennial sessions, *per se,*
changed the Treasurer's term; that is, the constitution is
changed by implication; and, 2ndly, that the Judicial
Department cannot look behind the resolution, to see whether
it is of binding force. In reference to the second ground :
Suppose the Legislature is the sole judge of *how the people
voted* on a given question submitted to them; *whether they
ever voted at all,* is a very different inquiry. The constitution
prescribes the mode of changing it. Until that mode is
resorted to, it stands, in the language of its preamble, " to
promote the general welfare, and to secure to ourselves and
to our posterity the rights of life, liberty and property" : it
stands a check against any law, save in the manner pre-
scribed; it is the prescribed will, above and beyond any
reach of constructive change. This peculiar security is the
distinctive feature of a republic, the essential and marked
difference between a monarchy and a republic. The repeal
of a common statute, even, by implication, is never favored;
it is never allowed save from necessity; convenience is not
sufficient. The Treasurer's tenure of office is simply incon-
venient; for, 1st, the constitution gives the executive the
appointing power; (Art. 4 § 15;) 2ndly, a special session of
the Legislature may be convened to elect; and, 3rdly, by a
presumption of change, a high policy would be contravened.—
The object is, that year by year, and each year, future fitness
for the office may be judged by the past. Change in finances,
&c., might and would require different official abilities at dif-
ferent times. A presumption even arises against the change,
from the fact that the Legislature made no change in the laws
regulating his duties. When the constitution was changed in
1846, it became not only convenient, but necessary, that sena-

tors should hold by a different tenure. Instead, however, of invoking convenience and implication, the Legislature and people again altered the organic law in this regard, in the mode prescribed by the constitution.—See amendments of 1849—50.

To maintain that the Judicial Department cannot go behind the resolutions, is to maintain that the Legislature may change the constitution at will, without and in spite of the people.— The people create the constitution; the constitution creates the Legislature: it confines it to ordinary legislation, to which the Governor must assent; it gives it power to propose amendments to the constitution, in reference to which the Governor is no actor; (Hollingsworth v. Virginia, 3 Dallas 378;) it establishes courts to guard it from inroads by the Legislature. The Legislature, then, is held within the pale of the constitution by the courts; and when it transcends it, there are but two remedies: 1st, judicial intervention; and, 2nd, revolution. To the Legislature may be confided the sole power of deciding how the people voted; to the Judiciary, the questions, did they vote, and have the other steps been taken to change the organic law. On this subject, see 3 Story?s Com. on Const. 701; 1 Kent's Com. 448, 449, 453. As to the doctrine of amendments to the constitution, see 3 Story's Com. on Const., ch. XLI, 679, 690. As said, the Legislature, in this regard, are not lawmakers, but law-suggesters, and then law-ratifiers: the people are the makers and re-makers of the constitution.

Applying the ordinary rules of construing laws to the resolutions of 1846, what is their construction? In a deed or law, the more special description governs the general; the preamble is no part of the law, and is only resorted to for explanation from necessity. The preamble to the resolutions of 1846 asserts that "proposed amendments" had been suggested, and then adds, "and whereas the people have accepted said amendments, which are in the words and figures following": and then follows a copy of the previous resolutions, proposing a change to biennial sessions and the removal of the seat of government; but not one word is said about changing the Treasurer's tenure, which is fixed by a distinct constitutional provision. Then comes the enactment, "that the aforesaid amendments, proposed as aforesaid, and accepted as aforesaid, be ratified." To what do the words "aforesaid amendments" refer: to those that

were said before, or those that were alluded to before? Plainly to the former. The language analyzed is this : the Legislature have before proposed certain amendments, of which the people have accepted such as are in the words and figures following, &c.; therefore, these, so accepted, are ratified.

A distinct proposition was made to the Legislature of 1845–6, to change the resolutions under consideration, so as to embrace the Treasurer's tenure, *and it was rejected.*—See House Journal, 1844–6, pp. 183–4–5. This shows that the House only had under consideration the removal and biennial questions.

The codifiers were required to embrace in the Code the State constitution. They did embrace it, and the next Legislature adopted it. By that Code, the amendments of 1846 do not extend to the Treasurer's tenure : it omits the preamble, and specifies the changes which were made ; but it does not specify any change in the twenty-third section of the fourth article.

The first count in the declaration is a mere general assignment ; it does not state that Frierson received any money, nor, if so, how much ; nor does it allege what measure of injury has resulted from the alleged neglect. The second count alleges a default after Frierson's election ; *non constat*, that it was after the execution of the bond, which was given a month after his election. The bond does not cover past defaults.

GOLDTHWAITE, J.—The twenty-third section of the fourth article of the constitution, as it was originally adopted by the people in convention, is in these words: "A State Treasurer and a Comptroller of Public Accounts shall be annually elected, by the joint vote of both Houses of the General Assembly."— The main question in the case before us, is, whether this section has been changed.

The constitution can be amended in but two ways : either by the people, who originally framed it, or in the mode prescribed by the instrument itself. If the last mode is pursued, the amendments must be proposed by two thirds of each House of the General Assembly ; they must be published in print, at least three months before the next general election for representatives ; it must appear, from the returns made to the Secretary of State, that a majority of those voting for representatives

have voted in favor of the proposed amendments; and they must be ratified by two thirds of each House of the next General Assembly after such election, voting by yeas and nays, the proposed amendments having been read, at each session, three times, on three several days, in each House.—Con. Ala., Clay's Dig. XL.

We entertain no doubt, that, to change the constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment. We scarcely deem any argument necessary to enforce this proposition. The constitution is the supreme and paramount law.— The mode by which amendments are to be made under it is clearly defined. It has been said, that certain acts are to be done—certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them. To do so, would be to violate the instrument which they are sworn to support; and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law.

We now proceed to the inquiry, as to whether the requisitions of the constitution have been complied with, so as to effect a change in the section referred to.

The joint resolutions adopted at the session of 1844–5, (Sess. Acts 208,) proposed eight amendments to the constitution, one of which was the striking out the word "annual," and inserting "biennial" in its place, in the twenty-third section of the fourth article, which would have had the effect of increasing the tenure of the office of the Treasurer and Comptroller to two years.

By the act approved the 24th of January, 1845, (Sesssion Acts 209,) it was made the duty of the sheriffs, and other officers superintending the elections, to require the electors to vote only on two of the amendments offered, neither of which, however, embraced the amendment proposed in relation to the twenty-third section of the fourth article; but, as the constitution gave the elector the right to vote on all of the amendments, the act of 1845 could not deprive him of this right. The law

was certainly objectionable, as its obvious tendency would be
to prevent the expression of the opinion of the electors upon any
other of the proposed amendments, than those brought directly
to their notice by the questions of the returning officer.  It
was, however, the constitutional duty of the officers, to open a
poll for, and make return to the Secretary of State of, the vote
on the amendment proposed ; and the duty thus imposed could
not be affected by the act referred to.  As to whether the
returns made show that a majority of those voting in favor of
representatives, voted in favor of the amendments, as the case
is presented before us, we cannot inquire.  We must presume
that the returns were duly made, and the basis properly laid,
for the subsequent action of the members of the Legislature.

At the next session, joint resolutions were adopted, the pre-
amble to which recites, that, ".Whereas the General Assembly
of this State, at the last session of the same, duly submitted to
the people of said State proposed amendments to the constitu-
tion : and whereas the people of this State, in the manner and
form as provided by the constitution, have accepted the said
amendments, which are in words and figures following." Then
follow all the amendments which were proposed at the preced-
ing session, except the one proposing the change in the twenty-
third section of the fourth article, which is entirely omitted ;
and then the ratifying resolution is added, in these words : "Be
it resolved, by the Senate, &c., two thirds of each House con-
curring, that the aforesaid amendments to the constitution,
proposed as aforesaid, and accepted by the people as aforesaid,
be ratified, and that the same, from and after the passage of
this resolution, be and form a part of the constitution of the
State of Alabama."

This act is, in our opinion, legitimately susceptible of but
one construction.  The preamble recites, that the amendments
which had been proposed at the previous session, had been
accepted by the people ; and had the resolution gone on to
declare, that such amendments were ratified by two thirds of
each House in the mode required by the constitution, it would
have been sufficient, as we could not, upon the demurrer, have
gone behind the resolution and inquired whether the amendments
had been read the number of times required, and passed by
yeas and nays.  But the act purports to set out the resolutions

Collier, Governor &c., v. Frierson et al.

which were proposed and accepted by the people, and the rule is, that the special governs the general. We know, it is true, that another amendment than those embodied in the act was proposed by the preceding Legislature; but we do not know, except so far as the act informs us, whether the people had accepted that amendment; and we are unable, upon any sound principle of construction, to arrive at this conclusion from the act itself. Our conclusion would rather be, that the people had accepted only those amendments which are set out in the act.

Again; we know of no rule of construction by which the word "aforesaid," in the ratifying clause, can be referred to any other amendment than those which the resolution sets forth. It is the same as if the clause had enacted, that the amendments set forth in the preamble, "having been proposed as aforesaid, and accepted by the people as aforesaid, are hereby ratified"; and, it is obvious, that if such had been the plain language of the act, the ratification could have embraced only the amendments which were particularly referred to.

The view we have taken we regard as conclusive of the case, and we make the decision with less reluctance, for the reason, that, on looking to the journals of the General Assembly, we find that the amendment which was omitted in the act last referred to, was not read in either House during the session at which it could have been ratified, and this omission, we are inclined to think, had it been properly brought to the notice of the court, would have been equally fatal to the amendment.

The change, from annual to biennial sessions, cannot affect the section we have considered. Both clauses in the constitution can stand together, and, although some inconvenience may result, if it be deemed necessary to convene a special session of the Legislature for the election of the Treasurer and Comptroller, a point upon which we express no opinion, this inconvenience must be submitted to. We cannot establish an unsafe precedent upon a question of constitutional law, to escape from it.

Our views upon this question render it unnecessary to decide any other presented upon the record.

Judgment affirmed.