81 So.2d 881

## OPINION OF THE JUSTICES.

### No. 148.

Supreme Court of Alabama.

July 11, 1955.

---

To the House of Representatives of Alabama
State Capitol
Montgomery, Alabama

Gentlemen:

In response to House Resolution No. 7, we submit the following:

House Bill No. 9 provides as follows:

"A Bill
"To Be Entitled
An Act

"Proposing amendments of the Constitution of Alabama (1901) relating to representation in the Legislature.

"Be It Enacted By The Legislature Of Alabama:

"Section 1. The following amendments of the Constitution of Alabama (1901) relating to the Legislature are proposed, and shall become valid as a part thereof when approved by the qualified electors as prescribed by law:

"1. Every county in this State having a population of 650,000 or less shall have and elect one state senator, and every county having more than 650,000 shall have and elect two senators.

"2. The House of Representatives shall, until another reapportionment is made in accordance with Section 199 of this Constitution, consist of 109 members, distributed among the several counties on the basis of population, according to the 1950 or any subsequent federal decennial census, as follows: Those counties having a population of 38,500 or less shall each have and elect one representative; those counties having a population of not less than 38,501, nor more than 77,000 shall each have and elect two representatives; those counties having a population of not less than 77,001, nor more than 115,500 shall each have and elect three representatives; those counties having a population of not less than 115,501 nor more than 154,000 shall each have and elect four representatives; those counties having a population of not less than 154,000 nor more than 192,500 shall each have and elect five representatives; those counties having a population of not less than 192,501 nor more than 231,000 shall each have and elect six representatives; those counties having a population of not less than 231,000 nor more than 269,500 shall each have and elect seven representatives; those counties having a population of not less than 269,501 nor more than 308,000 shall each have and elect eight representatives; those counties having a population of not less than 308,001 nor more than 346,500 shall each have and elect nine representatives; those counties having a population of not less than 346,501 nor more than 385,000 shall each have and elect ten representatives; those counties having a population of not less than 385,001 nor more than 423,500 shall each have and elect eleven representatives; those counties having a population in excess of 423,500 shall each have and elect twelve representatives; provided, that each new county hereafter created shall be entitled to one representative.

"3. Section 50, 197, 200, 202, and 203 of this Constitution, and the last sentence of Section 284 of this Constitution, as amended are expressly repealed.

"4. If any section or subdivision of this amendment shall be held to be invalid, inoperative, or void by any court of competent jurisdiction and of final resort, for any reason, the residue shall not be thereby invalidated or affected.

"5. This amendment shall become effective upon the proclamation of its ratification, but its provisions shall not affect the term of any member of the Legislature whose term does not expire until the day after the general election in 1958.

"Section 2. An election upon the proposed amendment is ordered to be held on the first Tuesday after the expiration of three months from final adjournment of the current session of the Legislature. The election shall be held in accordance with the provisions of Sections 284 and 285 of the Constitution of Alabama, as amended, and Chapter 1, Article 18, Title 17 of the Code of Alabama 1940.

"Section 3. Notice of the election and of the proposed amendment shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in a newspaper in each county of the State. In every county in which no newspaper is published, a copy of the notice shall be posted at each courthouse and post office."

In connection with the bill The House of Representatives has requested the opinion of the Justices of the Supreme Court on the following important constitutional questions:

"Question 1. Is it within the power of the Legislature to propose the amendments of the Constitution of 1901 as set out in said bill, or would such proposal contravene the provisions of Section 284 of the Constitution, as amended?

"Question 2. Does the Legislature have the power to propose an amendment to the Constitution repealing the last sentence in Section 284, as amended?

"Question 3. Do the proposed amendments change the basis of representation in the Legislature to other than a population basis contrary to the provisions of Section 284 of the Constitution, as amended?"

We first direct our attention to Question 2 because the answers to the other questions are dependent upon the answer to Question No. 2: "Does the Legislature have the power to propose an amendment to the Constitution repealing the last sentence of Section 284, as amended?" That sentence reads: "Representation in the legislature shall be based upon population, and such basis of representation shall not be changed by Constitutional amendments."

Our Declaration of Rights comprises the first thirty-six (36) sections of the Constitution of Alabama of 1901. Section 2 reads:

"That all political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit; and that, therefore, they have at all times an inalienable and indefeasible right to change their form of government in such manner as they may deem expedient."

Section 36 provides:

"That this enumeration of certain rights shall not impair or deny others retained by the people; and, to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate."

We submit that there is no stronger language in our Constitution than that just quoted, yet it is generally held that a section of the Declaration of Rights may be amended.—Annotation 36 A.L.R. 1456.

■ Surely it is self evident that with the ultimate sovereignty residing in the people, they can legally and lawfully remove any provision from the Constitution which they previously put in or ratified, even to the extent of amending or repealing one of the sections comprising our Declaration of Rights, even though it is provided that they "shall forever remain inviolate."

In Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231, 234, where it was argued that the suspension of certain unnamed sections of the Constitution by amendment XXVI-A, The Sparks Amendment, was not such an amendment as could be made under Section 284, and that the benefits of certain sections of the Constitution were themselves inviolate and could not be affected by a subsequent constitutional amendment, this Court said:

"That article [XVIII beginning with Section 284] is confined to the procedure to be pursued in amending the Constitution, assuming the amendment is one which is permissible. Section 2 of Article I of the Constitution *is the only one which specifically authorizes an amendment.* * * * (Emphasis supplied.)

"The mode of making amendments is mandatory and exclusive. Houston County v. Martin [232 Ala. 511, 169 So. 13], supra; Johnson v. Craft, 205 Ala. 386, 87 So. 375; Collier v. Frierson, 24 Ala. 100.

"But the character or nature of an amendment is not prescribed. It may extend to a 'change (in the) form of (the) government.' Section 2, Constitution. This may be in any respect, except that it must continue to be a 'republican form', Article IV, section 4, Constitution of the United States; Luther v. Borden, 7 How. 1, 12 L.Ed. 581, must not impair the obligations of contracts, nor otherwise violate section 10, Article I, of the Constitution of the United States, nor violate the Fourteenth Amendment of the Constitution of the United States, nor any other provisions of it.

* * * * * *

"Except as thus restricted, there is no limitation on the power to amend or rewrite the Constitution. Black on Constitutional Law, section 28, page 51; 16 Corpus Juris Secundum, Constitutional Law, §§ 7, 39, pages 29, 80; Collier v. Gray, 116 Fla. 845, 157 So. 40; 11 Am.Jur. 628; Scruggs v. Mayor, etc., Huntsville, 45 Ala. 220, 223.

"Every proposal which effects a change in the Constitution or adds or takes away from it is an amendment. 16 Corpus Juris Secundum, Constitutional Law, § 7, p. 31; 11 Am.Jur. 629, sections 24–25. It need not be germane to any other feature of it, nor to the feature which is thus amended, provided it is clear and definite in its provisions. 16 Corpus Juris Secundum, Constitutitonal Law, § 7, p. 31.

* * * * * *

" * * * But all rights acquired under the Constitution are subject to the further provisions of it which permit an amendment extending even to that exact right thus acquired, subject to the restrictions of the Federal Constitution, to which we have referred. *No right can be acquired under the Constitution which cannot be abrogated by an amendment of the Constitution, in so far as that Constitution is concerned.* This extends to contract and property rights, and would be effective in that respect but for the Constitution of the United States, which imposes a limitation on the state's Constitution and amendments of it or by state legislation. [Emphasis supplied.]

"It has been seriously attempted to exempt from the operation of that principle the features of what is called in the Constitution the 'Bill of Rights,' such as is embraced in the first thirty-six sections of our Constitution, which comprise Article I of it. Emphasis has been placed on the last clause of that section, which is as follows: 'and,

to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate.' * * *

"We are clear that it does not put a limitation on the power of amendment of the Constitution, but on the power of legislation. * * *

"In no quarter can we find a denial of the power to amend the Constitution by depriving one of rights created by it, except as prohibited by the Constitution of the United States. * * *

"Certainly rights under" section 284 "are no more inviolate than those under the Bill of Rights, in so far as the power to amend" it "is concerned in respects not controlled by the Constitution of the United States."

Four members of this Court stated their views in Opinion of the Justices, 254 Ala. 183, 47 So.2d 713, 714, where they said:

"The power to propose amendments to the Constitution is not inherent in the legislative department, and in the absence of a provision in the Constitution conferring such power on the legislature, it has no capacity thus to initiate amendments. Where, however, by the Constitution, the legislative department is authorized to submit amendments to the Constitution, its authority in that regard is restricted only by the limitations contained in that instrument and by the prohibitions of the Federal Constitution. 16 Corpus Juris Secundum, Constitutional Law, § 9, page 37; Johnson v. Craft, 205 Ala. 386, 87 So. 375. See, Collier v. Frierson, 24 Ala. 100; In re Opinion of the Justices, 222 Ala. 355, 132 So. 457."

The only comment necessary is that the Constitution of 1901 authorizes our legislature to submit constitutional amendments, Article XVIII, §§ 284–287 prescribe the method, and the proposal here, HB # 9, is in proper form to be submitted as a constitutional amendment.

That Section 284 is no more privileged from amendment than any other section is proven by the fact that the people did amend it in 1933.—See Amendment XXIV.

We do not think it necessary to give further citations on such a self-evident matter, but to demonstrate that other jurisdictions hold as we do, we cite a few authorities.

"Since constitutional provisions derive their force from the people themselves, not from the legislature, and under the American theory of government all power is inherent in the people, including the right to make changes in the organic instrument of government, there are practically no limits except those contained in the Federal Constitution as to the changes which may be made in the Constitution of a state, where such alterations are made in the prescribed manner. * * *.—11 Am.Jur., § 23, pp. 627–628, Constitutional Law.

"Every part of a state Constitution may be amended, including the provisions authorizing the making of amendments", (citing Washington v. State, 75 Ala. 582, 51 Am.St.Rep. 479).—11 Am.Jur., § 24, p. 629, Constitutional Law.

"Where authority is given the legislature by the constitution to propose amendments, such authority is not restricted to amendment or repeal of any section or part of the constitution already existent.—16 C.J.S., Constitutional Law, § 9, a (1).

"There is no dissent from the proposition that a constitutional provision or amendment may be repealed, since a provision for amendment is universally inserted, and by virtue thereof any other existing provisions, may be expunged.—Annotation 36 A.L.R. p. 1456, citing cases.

"The power to amend, revive or reenact a law rests with the people of the State. They can amend the Constitution in any particular that they

desire.—Stephens v. State, 138 Tex. Cr.R. 43, 133 S.W.2d 130, 131.

"The people adopted the Constitution, and the people alone can change it, * * *."—Brawner v. Curran, 141 Md. 586, 119 A. 250, 255.

■■ It therefore follows that it is our opinion that the people have the power and authority to amend any section, or any part thereof, in the existing Constitution, subject to the limitations noted in the Downs case, supra, and our answer to Question No. 2 is in the affirmative.

Question No. 1: "Is it within the power of the legislature to propose the amendments of the Constitution of 1901 as set out in said bill, or would such proposal contravene the provisions of Section 284 of the Constitution, as amended?"

■ We have already said that the people could amend Section 284 by repealing the last sentence thereof. Item 3 of HB 9 provides for the express repeal of Sections 50, 197, 200, 202, and 203 and the last sentence of Section 284 as amended. It is evident that this item was included merely to make certain the sections which were to be repealed, because the ratification of the proposed amendment would have the effect of repealing these sections, all of which deal with the single subject of representation in the legislature, because it would be in conflict with them. The bill properly provides for the calling of the election, proclamation and notice, and if ratified by the electorate would become a part of our Constitution. With the repeal of the last sentence of Section 284, there is nothing in the proposal which contravenes the provisions of said section. This last statement is of course based on the premise that the people would, at the election, ratify the proposal containing the repeal of the last sentence of Section 284. As stated in 16 C.J.S., Constitutional Law, § 7, page 30:

"It is not essential to the validity of an amendment which in effect modifies a constitutional limitation that the limitation be first changed, as the amendment itself works the change", and "The power to amend a constitution includes the power to repeal a provision thereof, and a repealing amendment must be adopted in the same manner as any other amendments."

There is no Alabama case in which the specific question before us is presented, but we think the general principles enunciated in our cases cited supra fully justify our position. This same question did arise in Colorado. The last sentence of the section on amendments in the Colorado Constitution, art. 19, § 2, said: "But the general assembly shall have no power to propose amendments to more than six articles of this constitution at the same session." An amendment was submitted which, according to the Chief Justice of the Colorado Supreme Court in his dissenting opinion, "radically amends * * * at least 10 and probably 16 [articles]." The Supreme Court of Colorado in People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 175, 102 Am.St.Rep. 34, said:

"It is next contended that the amendment itself amends more than six articles of the Constitution, and is therefore void because in violation of article 19, § 2, of the Constitution, as amended, which provides that the legislature shall have no power to submit amendments to more than six articles of the Constitution at any one session. We are of opinion that this position of counsel is untenable."

See also City of Chicago v. Reeves, 220 Ill. 274, 77 N.E. 237, which quotes the famous case of Collier v. Frierson, 24 Ala. 100, and reaches the same result as the Colorado Court did, the facts and the constitutional limitation being very nearly the same.

■ It is argued here that the only way the people of this State can remove the last sentence of Section 284 is by a constitutional convention. But the last sentence of Section 284 does not say that. No case in Alabama or the United States says that. The only indication that it was *intended* to

say that is gathered from the Official Proceedings of the Constitutional Convention of 1901, Vol. 3, Official Proceedings, Constitutional Convention of 1901, pp. 3906–3924. True, from the debates it can be said that it was the purpose of the convention that representation in the legislature shall be "upon a population basis until another constitutional convention shall be called". That purpose, as disclosed by the debates in the convention, was based on the following assumptions:

1. That the black belt counties would continue to have the largest population, continue to be the wealthiest and continue to be the largest taxpayers. The years have proven this assumption to have been incorrect and an opposite result has been apparent for years.

2. That the white counties of the State might change the basis of representation from that of population to one based on the number of white people in every county or the number of votes cast in each county. This, of course, did not materialize and never was a valid assumption, because Sections 198, 199 and 200 of the Constitution also provided that representation in the legislature should be according to population.

3. That the black belt counties would not vote to ratify the proposed Constitution unless this provision were inserted. We have no way of evaluating this assumption.

Thus we see that the reasons for adding the last sentence of Section 284 were based in the main on an absolutely incorrect guess as to what the future would bring.

We know, and the people of this State know, that our Constitution says that it *shall* be the duty of the legislature to reapportion the legislature according to population after each decennial census and that this constitutional mandate of the Constitution of 1901 has never been complied with. We cannot be blind to the fact that the question of reapportionment has become tremendously important in the political life of Alabama and has been and is the means of aligning sections of our State against each other to the detriment of all sections.

We know from the history of attempts to secure reapportionment that it has been impossible, as a practical matter, to change the present apportionment of the legislature as set out in Sections 202 and 203 of the Constitution of 1901 to an apportionment based upon population as required by the Constitution, chiefly because the senate was not apportioned on a basis of population in the Constitution of 1901, and this defect was called to the attention of the convention. Vol. 3, pp. 3968–70. As we said supra, presupposing the repeal of the last sentence of Section 284, there is no bar to the right of the sovereign people to ratify the proposed amendment if they choose to do so.

Question No. 1 is a double question. Our answer to the first part is in the affirmative; our answer to the second part is in the negative.

Question No. 3: "Do the proposed amendments change the basis of representation in the legislature to other than a popluation basis contrary to the provisions of Section 284 of the Constitution as amended?"

Our answers to Questions 1 and 2 render it unnecessary to answer No. 3, but we do make this observation. Sections 198 and 199 of the Constitution require that the House of Representatives be apportioned according to population, and those sections are not repealed directly or indirectly by the provisions of HB 9. Therefore Item 2 of Section 1 of HB 9 must provide for representation in the House of Representatives according to population. The instant proposal does apportion membership in the House on a population basis as required by the Constitution.

We are not impressed that Item 1 of Section 1 of HB 9 is an apportionment of the Senate according to population even though it is provided that counties having more than 650,000 population shall have and elect two senators. However with the express repeal of the sections or parts thereof listed in Item 3 of Section 1 of HB 9,

it is not necessary that the Senate be apportioned according to population.

Respectfully submitted,
ROBERT T. SIMPSON,
DAVIS F. STAKELY,
PELHAM J. MERRILL,
JAMES J. MAYFIELD,
Justices

House Bill No. 9 and the questions propounded to the Justices by House Resolution No. 7 have been copied in extenso in the opinion signed by a majority of the Justices. We see no reason to restate the questions involved. We will hereafter, at times, refer to the opinion set out above as the majority opinion.

Obviously, House Bill No. 9 proposes to submit to the voters of Alabama a constitutional amendment reapportioning the Legislature of Alabama. It is as equally obvious that the proposal to repeal by a constitutional amendment Sections 50, 197, 200, 202 and 203 of the Constitution is incidental, but related, to the main purpose of the proposed constitutional amendment which deals with representation in the Legislature of Alabama.

Where the question submitted, even though it may contain what appears to be several different questions, cannot be so divided that, when submitted separately, any one might be approved and all the others rejected, and when so approved, become effective and operative, it should be submitted as one amendment. This requirement necessitates the separate submission of such amendments only as have different objects and purposes, because several changes necessary to carry out a single purpose constitute only one amendment. 16 C.J.S., Constitutional Law, § 9, page 44. Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703. The proposed constitutional amendment here considered contains several proposed changes. These changes are necessary to carry out a single purpose and constitute only one amendment. Authorities, supra.

In construing constitutional provisions, we should bear in mind, as has been often said, that constitutions are made for practical purposes and look to practical ends, and in the construction of them, we are to take into consideration the conditions which confronted the constitutional makers, and, if possible, give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd. Tucker v. State ex rel. Poole, 231 Ala. 350, 165 So. 249; Houston County Board of Revenue v. Poyner, 236 Ala. 384, 182 So. 455. Our books abound with illustrative cases, the leading authority being that of Ballentyne v. Wickersham, 75 Ala. 533; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695, which has been so frequently cited in our subsequent decisions.

At the outset, it should be borne in mind that the Constitution of 1875 provided that the whole number of senators shall be not less than one-fourth or more than one-third the whole number of representatives, and that the House of Representatives shall consist of not more than one hundred members, *who shall be apportioned by the General Assembly among the several counties of the state, according to the number of inhabitants in them, respectively.*

Also, it should be borne in mind that the legislative act calling the Convention of 1901 contains Section 15, which reads as follows:

"Be it further enacted, That if such convention be called it shall incorporate in any constitution it may form and adopt the same basis of representation in the General Assembly as is now provided in the present Constitution of the State." Article IX, Constitution of 1875. Acts 1900–1901, pp. 224–230.

At the time the Constitutional Convention was considering the adoption of Section 284, that section read as follows:

"Section 1. Amendments may be proposed to this Constitution by the General Assembly in the manner following: The proposed amendments shall be read in the House in which they originate on three several days,

and if upon the third reading, three-fifths of all the members elected to that House shall vote in favor thereof, the proposed amendments shall be sent to the other House in which they shall likewise be read on three several days, and if upon the third reading three-fifths of all the members elected to that House shall vote in favor of the proposed amendments, the General Assembly shall order an election by the qualified electors of the State upon such proposed amendments, to be held either at the general election next succeeding the session of the General Assembly at which the amendments are proposed or upon another day appointed by the General Assembly not less than three months after adjournment of the session of the General Assembly at which the amendments are proposed. Notice of such election, together with the proposed amendments, shall be given by proclamation of the Governor, which shall be published in every county in such manner as the General Assembly shall direct, for at least eight weeks successively, next preceding the day appointed for such election. On the day so appointed, an election shall be held for the vote of the qualified electors of the State on the proposed amendments. If such election is held on the day of the general election, the officers of the general election shall open a poll for the vote of the qualified electors on the proposed amendments; if it be held on a day other than that of a general election, officers for such election shall be appointed and the election shall be held in all things in accordance with the law governing general elections. In all elections upon such proposed amendments, the votes cast thereat shall be canvassed, tabulated, and returns thereof made to the Secretary of State, and counted, in the same manner as is due in elections for Representatives in the General Assembly, and if it shall thereupon appear that a majority of the qualified electors who voted at such election upon the pro-

posed amendments, in favor of the same, such amendments shall be valid to all intents and purposes, as parts of this Constitution. The result of such election shall be made known by proclamation of the Governor." It will be noted that Sec. 284 as finally adopted contains some changes in verbiage, not here material.

At that time, Mr. Coleman of Greene County, a delegate to the Constitutional Convention of 1901, proposed an amendment to Sec. 284, as it was then framed, which, as finally adopted by the Convention, reads as follows:

"*Representation in the legislature shall be based upon population, and such basis of representation shall not be changed by constitutional amendment.*"

The proposed amendment was not only adopted by the Convention, but was ratified and approved by the people themselves. The intent and meaning of this constitutional provision is made crystal clear by the statements made on the floor of the Convention by its author and others. Mr. Coleman stated:

"Now the great reason some provision of this kind should appear either here or in the report of the Committee on Representations is this: When the Convention assembles as a Convention, of course it can change this provision if it sees proper. When you submit an amendemnt to the Constitution to the people, on one single question, it can never be presented in all its force and with all its merits. *This simply provides that it shall not be altered by a simple amendment made to the Constitution. It should always remain upon a population basis until another Constitutional Convention shall be called, when it can then properly consider all these protections and provisions which are necessary.*" (Emphasis supplied.) Official proceedings, Constitutional Convention 1901, Vol. 3, p. 3913.

In addition to the above statement of the author of the amendment, Mr. Reese, a delegate from Dallas County to the Constitutional Convention of 1901, in speaking to this question, said:

"This Section provides the manner in which amendments can be adopted to the Constitution, and to use the expression of a distinguished gentleman on this floor, hereafter amendments will be adopted with great facility, and under the provision in this Section it almost amounts to the Legislature changing the basis of representation. It only requires three-fifths vote of the Legislature to submit an amendment to the people. When the section which I represent have gone in under the workings of this new machinery, their voting power will be very much limited, and we will have to rely upon the liberality, honesty and good faith of North Alabama, *and we don't want to have to rely upon the Legislature to keep the faith that delegates made before they came here. The effect of this is to cut off amendments on the subject of representation unless made by a Constitutional Convention. In other words the amendment offered will say to the Legislature you can amend on any other subject, but you cannot deprive counties of representation they have in this Constitution without calling a Constitutional Convention.*

\* \* \* \* \* \*

" \* \* \* It is nothing but right and justice that we shall be guaranteed until there is another Constitutional Convention held that the basis of representation shall remain unchanged. Before this Convention was called, that question more than all others was the issue on which my people determined whether or not they would support this movement. Unless they are guaranteed by this Constitution in the way I suggest, I do not believe that they can consistently ratify the work of this Convention. I do not believe that you can expect them to do it. \* \* \* I say that, as far as the black belt is concerned, under the provisions of this Constitution, their representation can be taken away from them with ease in the next legislature and in issue made between the black belt and the other sections of the State. \* \* \* They understand if you leave this facile and easy method of taking their representation from them, that the guarantee on the Article of Representation is not worth a cent, that it has a string tied to it. \* \* \*" (Emphasis supplied.)

Mr. Malone, also a delegate to the Convention, said:

"I wish to support that amendment, and I wish to do so as coming from one of the white counties of this State. If there is anything in this world our people want, it is every temptation on earth to be removed to pad the returns of election. What we want is to set it upon a right basis. Give us what we are entitled to, and give them what they are entitled to, then there is no inducement on earth that I see, for any frauds hereafter. As far as I am concerned, I would be willing to fix it so it never could be changed by constitutional amendment or any other way. I don't believe any argument could be added here that would give it as much force and strength in all sections of the State as that very thing. Let us settle that thing once and for all. It is fair and just, and let us remove any temptation to do wrong in it. And coming from the white belt section, I support it."

Mr. O'Neal, also a delegate to the Convention, said in support of the amendment:

*"We intend to let the representation be what is it* (sic) *today, and I, for one, am in favor of putting it in the Constitution, so that it can not be changed except by the people of Alabama in Convention assembled.* \* \* \*

\* \* \* \* \* \*

"The question now is to state this question definitely so as to remove all suspicion from the minds of the peo-

ple of the black belt in future. We need their assistance in ratifying this Constitution; we expect it; we are going to have it. We can not have it, though, unless we treat them with fairness and justice, and I say that every sentiment of justice and fairness requires that we make a declaration here which can not be misunderstood or misrepresented, as to our intention relative to representation." (Emphasis supplied).

A mere reading of the foregoing makes it crystal clear that the Constitutional Convention of 1901 did not intend that the basis of representation should ever be changed until it was changed by another constitutional convention, duly and legally assembled under the law.

The power to initiate amendments to the Constitution is not inherent in the legislative department, and in the absence of a provision in the Constitution conferring such power on the Legislature, it has no capacity thus to initiate amendments. 16 C.J.S., Constitutional Law, § 9, page 37; Johnson v. Craft, 205 Ala. 386, 87 So. 375; In re Opinion of the Justices, 252 Ala. 205, 40 So.2d 623. See, also, Collier v. Frierson, 24 Ala. 100; In re Opinion of the Justices, 222 Ala. 355, 132 So. 457.

It was said in Johnson v. Craft, supra [205 Ala. 386, 87 So. 380]:

"The Constitution of Alabama, like that of the nation and of the other states, is the supreme law within the realm and sphere of its authority. Subject only to the restraints resulting from the Constitution of the United States, the Constitution of Alabama is the highest form and expression of law that exists in this state. The source of its creation and the character of its sanction, viz. the people's deliberate will, invest the Constitution with its paramount quality. The Constitution's control is absolute wherever and to whatever its provisions apply; and every officer, executive, legislative, and judicial, is bound by oath (section 279) to support the Constitution, to vindicate and uphold its mandates, and to observe and enforce its inhibitions without regard to extrinsic circumstances. It commits to no body, officer, or agent any authority or power whatever to change or modify or suspend the effect or operation of its mandates or its prohibitions; *the instrument itself prescribes the exclusive modes by which it may be altered or amended, or its effect and operation changed. Otherwise than as these exclusive modes contemplate and authorize the Constitution's alteration, its character is permanent, its force and influence enduring. Both of these exclusive modes are plainly stated in sections 284–287 of the Constitution. Only through a constitutional convention, called and convened as provided in the existing organic law, or through amendment proposed and adopted as provided in the existing organic law, can the Constitution be altered or changed.* It is with the latter mode we are now concerned. [Emphasis supplied.]

"Upwards of 60 years ago this court had occasion to consider and to pronounce constitutional principles referable to the change by amendment of the organic law. The opinion then delivered by Justice Goldthwaite established Collier v. Frierson, 24 Ala. 100, as a leading authority in our country on the subject under consideration. Many courts of the highest repute, as well as text-writers, have accorded the doctrine there announced the unreserved acceptance its obvious soundness deserves, and have given that pronouncement its own great place in the constitutional jurisprudence of the republic. With a brevity, and also a comprehension, that is notable and gratifying, it was there said:

" 'We entertain no doubt, that, to change the Constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself must be observed, and the omission of any one is fatal to the

amendment. We scarcely deem any argument necessary to enforce this proposition. The Constitution is the supreme and paramount law. The mode by which amendments are to be made under it is clearly defined. It has been said that certain acts are to be done, certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature, or any other department of the government, can dispense with them. To do so would be to violate the instrument which they are sworn to support, and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law.'

\*    \*    \*    \*    \*    \*

"The provisions of the Constitution providing for its amendment are mandatory, not directory—binding on the people themselves and concluding every department, body, officer, and agency under its authority. Authorities supra; 12 C.J. pp. 688, 689. *The power granted the Legislature to propose amendments to the Constitution is a particular, special power, not possessed by the Legislature otherwise than through grant by the instrument itself. It can only be exercised in the mode prescribed, and the mode defined is the measure of the power.* Collier v. Frierson, supra; Oakland, etc., Co. v. Hilton, 69 Cal. 479, 514, 11 P. 3; Jones v. McDade, supra [200 Ala. 230, 75 So. 988]. It results from the system and the provision of the Constitution that in proposing amendments to that instrument, to be voted upon by the electorate, the Legislature is not exercising its other power to make laws. Jones v. McDade, supra; Livermore v. Waite, 102 Cal. 113, 36 P. 424, 25 L.R.A. [312] 313, 315, 316; 12 C.J. p. 693; 6 R.C.L. § 19, pp. 28, 29. Recognition of this last-stated principle—resultant, as it is, from those previous-

ly reiterated—is an essential prerequisite to any sound, logical conclusion upon the objection now being considered. To ignore it or to deny it appropriate effect is to invite error in judgment and to court the affirmation of inexcusable fallacy." (Emphasis supplied.)

So, the Legislature is without power in the first instance to initiate a constitutional amendment to reapportion the Legislature other than on a population basis.

It is not a question of the people's right to amend or change the Constitution. The point is, that the Legislature has been *denied* the right, by the people themselves in adopting the Constitution, *to initiate* a proposal to reapportion the Legislature of Alabama by such an amendment.

The majority opinion of the Justices states:

"Surely it is self evident that with the ultimate sovereignty residing in the people, they can legally and lawfully remove any provision from the Constitution which they previously put in or ratified, even to the extent of amending or repealing one of the sections comprising our Declaration of Rights, even though it is provided that they 'shall forever remain inviolate.' "

We have no quarrel with that statement of a fundamental principle. But let us emphasize again, that is not the question before us. *The question is, the mode, manner or method of removing a provision from the Constitution. One method is* by a constitutional convention, the other by constitutional amendment, initiated by the Legislature in conformity with Section 284, supra. Section 284, supra, is the only authority for the Legislature to initiate constitutional amendments, and that section not only does not authorize the Legislature to initiate an amendment changing the basis of representation in the Legislature, but specifically and emphatically withholds from the Legislature the power or authority to do so.

If the people of Alabama want to change the basis of representation in the Legisla-

ture, there are no barriers to prevent it. The way is open, clear and unobstructed—by a constitutional convention—called and assembled under the provisions of the Constitution itself.

It is our judgment that the majority opinion renders the last sentence of Section 284 meaningless and of no force or effect whatever. We are of the further opinion that it was put there for a purpose. Its meaning is plain and unambiguous, and we have no authority to write it out of the Constitution. To do so would be to violate the instrument which we are sworn to support, and every principle of public law and sound constitutional policy requires us to pronounce against every amendment which is shown not to have been made in accordance with the rules prescribed by the fundamental law. Johnson v. Craft, supra.

The prohibition contained in the last sentence of Section 284, supra, when considered in connection with 286 of the Constitution, which latter section, according to the opinion of the Justices this day released, is to the effect that a limited constitutional convention is prohibited, simply reflects the determination that the population basis of representation was considered so fundamental that it should be placed beyond the reach of temporary political currents and reconsidered only in connection with a general review of the entire basic structure of the government.

The Legislature, under Section 44, Constitution of Alabama 1901, consists of a Senate and a House of Representatives. Section 284, supra, means, therefore, that representation in both the House and Senate shall be based upon population if the present number of members of the House and Senate is sought to be changed, other than, of course, by creation of new counties.

If all the provisions of the Constitution of 1901 relating to representation in the Legislature, including Sections 50, 197, 200, 202 and 203, were repealed by constitutional amendment, the last sentence of Section 284, supra, which cannot be repealed by constitutional amendment, would still be in force and effect, and representation in the Legislature would still have to be based upon population.

The only way that the people can amend or change the last sentence of Section 284, supra, is through a constitutional convention. It cannot be done by constitutional amendment. Collier v. Frierson, 24 Ala. 100; 16 C.J.S., Constitutional Law, § 8, page 34, and authorities, supra.

House Bill No. 9 provides:

"1. Every county in this State having a population of 650,000 or less shall have and elect one state senator, and every county having more than 650,000 shall have and elect two senators."

This is not representation based upon population, and it is clear that the proposed amendment would have the effect of changing the basis of representation in the Legislature to other than a population basis.

It results, therefore, that Question 1 should be answered by saying that the proposed constitutional amendment containing several related amendments to the Constitution, as set out in House Bill No. 9, contravenes the provisions of Section 284 of the Constitution of Alabama 1901, as amended.

Question 2 should be answered in the negative.

Question 3 should be answered in the affirmative.

Respectfully submitted,

J. ED LIVINGSTON,
Chief Justice
THOMAS S. LAWSON,
JOHN L. GOODWYN,
Justices.