ALMON, Justice.
Governor Guy Hunt, Lieutenant Governor James Folsom, Secretary of State Billy Joe Camp,[1] Attorney General James Evans, and. Speaker of the House Jimmy Clark (collectively the Local Constitutional Amendment Commission, referred to herein as “the Commission”) appeal from the judgment of the circuit court declaring invalid a purported constitutional amendment, proposed by Act 91-218, Ala.Acts 1991. The issue is whether the purported amendment was adopted through a constitutionally valid procedure.
Act 91-218 proposed an amendment to the Alabama Constitution of 1901 that would allow the legislature to authorize, by local act, “the election of the members of the board of education of the City of Decatur in Morgan County.” The legislature also provisionally passed a local act, Act 91-302, Ala. Acts 1991, providing that the board of edu *395 cation of Decatur (“the School Board”) was no longer to be appointed by the Decatur City Council, but was to be chosen by the electors of the City; Act 91-302 was to become effective after the ratification of the constitutional amendment.[2] Act 91-218 specifically provided that the proposed amendment was to become effective when all the requirements of Amendment 425 to the Alabama Constitution of 1901 had been fulfilled.
Amendment 425 provides a procedure for amending the constitution when the amendment affects only a single county. Amendment 425 provides, in pertinent part:
“Any proposed constitutional amendment which affects or applies to only one county shall be adopted as a valid part of the constitution by a majority vote of the people of the county and in any political subdivision thereof so affected, provided that such proposed amendment has first been unanimously approved by at least a three-fifths vote of the elected members of each house and unanimously approved by a local constitutional amendment commission composed of the governor, lieutenant governor, attorney general, secretary of state and speaker of the house of representatives. ...”
Act 91-218 originated as House Bill 956, which received the necessary unanimous three-fifths vote in both houses of the legislature. The proposed amendment was then submitted to the Commission[3] for approval. The Commission did not approve the submission of the proposed amendment to the voters of Morgan County, however, because, while most of the City of Decatur lies in Morgan County, it extends into Limestone County. Because the amendment proposed by Act 91-218 applied to or affected more than one county, the Commission determined that the Amendment 425 procedure was inappropriate. The Commission proposed instead to submit the amendment to the statewide electorate in the primary election on June 2, 1992.
The members of the School Board brought an action against the members of the Commission in May 1992, alleging that the Commission had exceeded its authority in submitting the proposed amendment to a statewide vote after the legislature had specifically ordered an election upon the proposed amendment “in the City of Decatur, Morgan County, ... in accordance with the provisions of Amendment 425.” The plaintiffs initially requested the circuit court to enjoin the defendants from placing the proposed amendment on the ballot for the June 2 election. The circuit court denied this relief, and a majority of the statewide electorate voted in favor of the amendment in the June 2 election. However, in its subsequent decision on the merits, the circuit court declared the purported amendment null and void. It stated that Ala. Const.1901, Art. XVIII, § 284, as amended by Amendment 24, is the exclusive method of amending the constitution when the proposed amendment affects more than a single county, and that this procedure must be strictly followed. The circuit court, therefore, held that the Commission had exceeded its authority in submitting the amendment to a statewide vote.
The Commission asserts that the trial court’s analysis of Amendments 425 and 24 is flawed. It argues that the language of Amendment 425 is ambiguous, and thus that the function of the Commission can be ascertained only through a “contemporaneous construction” analysis. It presents as evidence of this contemporaneous construction a December 15, 1983, opinion of the Attorney General, which, it says, establishes that, if the legislature errs in proposing an amendment to be submitted to a single-county vote even though it applies to an area larger than one county, the Commission can cure the *396 legislature’s error by ordering a statewide vote.[4] The Commission thus argues that its function is to correct the legislative action by “redirecting” the amendment to a statewide vote.
The School Board takes a much narrower view of the Commission’s authority. It argues that the sole function of the Commission in this situation is to determine whether the amendment affects more than one county and, if so, to refer the matter back to the legislature.
The “contemporaneous construction” argument advanced by the Commission is unpersuasive. The Commission quotes the following excerpt from a December 15, 1983, attorney general’s opinion to Randolph County Probate Judge Bob Kirby in support of this argument:
“It is highly unlikely that the legislature intended to give the Governor, Lieutenant Governor, Attorney General, Secretary of State, and Speaker of the House of Representatives, individually, veto power over any proposed local constitutional amendment. If Amendment 425 is read to be the exclusive method by which to adopt local amendments to the constitution, such a veto power would appear to vest in each of the above named individuals. The more reasonable interpretation would be that Amendment 4%5 was intended as a nonexclusive method of avoiding a statewide vote on purely local matters, but that if a local amendment for some reason is not approved pursuant to Amendment 425, it still may be approved and adopted in the manner followed previous to the adoption of Amendment 425.”
(Emphasis in appellants’ brief.) The Commission argues that the emphasized language supports its position that it may submit directly to the statewide electorate an amendment that it declines to approve pursuant to Amendment 425. This language, however, can also be read to state that the proper action for the Commission to take would be to disapprove a vote on the amendment under Amendment 425 and to refer the matter back to the legislature for further consideration under Amendment 24. The latter interpretation more nearly accords with the provisions in Amendments 425 and 24 for amending the constitution.
The broader “functional” argument advanced by the Commission — that its actions were consistent with the spirit of Amendments 425 and 24 — is inconsistent with longstanding law concerning amendment procedures, for the reasons enunciated below.
Our constitution contains two procedures, other than the convention procedure, Ala. Const.1901, art. XVIII, §§ 286, 287, for amending the document. Amendment 24 gives the general procedure for amending the constitution, and Amendment 425 provides a limited procedure for proposing and adopting an amendment that applies to only one county. These provisions are the exclusive means for amending the document, for the power to alter the constitution must be explicitly conferred in the instrument itself. State v. Manley, 441 So.2d 864 (Ala.1983); Johnson v. Craft, 205 Ala. 386, 87 So. 375 (1921); Hooper v. State ex rel. Fox, 206 Ala. 371, 89 So. 593 (1921); Collier v. Frierson, 24 Ala. 100 (1854). For example, in Johnson and Hooper the legislature proposed amendments to the constitution that purported to confer upon the Governor the power to call statewide elections for the amendments. Although there was no express provision in the constitution prohibiting the legislature from delegating this power to the Governor, this Court held that the purported amendments were invalid because § 284 provided that only the legislature has the power to order the statewide elections. This Court refused to recognize an implied or supplementary power on the part of the Governor in the amendment process.
An important corollary to the rule that any power in the amendment process must be expressly conferred is that the prescribed amendment procedures must be strictly followed and that any deviation from the procedure renders the proposed amendment a nullity. This rule applies notwithstanding a vote by the electorate in favor of the amendment. Johnson, Collier, supra. *397 The fundamental law must necessarily be immune to unauthorized change by any of the coordinate branches of government. In Collier, supra, this Court stated:
“The constitution is the supreme and paramount law. — The mode by which amendments are to be made under it is clearly defined. It has been said, that certain acts are to be done — certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them. To do so, would be to violate the instrument which they are sworn to support. ...”
24 Ala. at 109.
The application of these principles yields a clear result. Here, the Commission attempted to exercise a power — “redirecting” to the statewide electorate the proposed amendment erroneously submitted to it— that was not explicitly granted to it by the constitution. Although the constitution admittedly does not expressly prohibit the action taken by the Commission, this Court has repeatedly condemned the exercise, by any entity, of any nonexplicit power in the amendment process. Moreover, here the legislature specifically directed that the school board amendment be submitted to the voters of Morgan County pursuant to Amendment 425. When the proposed amendment was not approved for a vote pursuant to that procedure, the Commission usurped the legislature’s role in the amendment process by submitting the amendment to a statewide vote,[5] because Johnson and Collier establish that only the legislature possesses the authority to submit a proposed amendment to a statewide vote.
The Commission also argues that the effect of a failure by it to unanimously approve a proposed amendment for submission to a vote in a single county is that the amendment will be submitted to a vote of the entire state. It seizes upon the language in the attorney general’s opinion questioning whether the legislature intended to give a single member of the Commission veto power over proposed local amendments. However, Amendment 425 clearly compels exactly this result. It provides that a proposed amendment to the Constitution can be submitted to a vote within a single county only if it is “unanimously approved by at least a three-fifths vote of the elected members of each house and unanimously approved by a local constitutional amendment commission.” Thus, a single nay vote in the legislature will defeat the proposed amendment, and a single dissenting or abstaining vote in the Commission will defeat it. A favorable vote by three or four of the five Commission members will not suffice, because of the contrast in Amendment 425 between its requirement of a unanimous vote of three-fifths of the members of each house of the legislature and its requirement of a unanimous vote of the Commission. If the framers had intended to allow for abstentions within the Commission, they would have provided for a unanimous vote of three-fifths or four-fifths of the Commission. The only construction of this provision that gives effect to all of the language employed is that up to two-fifths of the members of each house of the legislature can abstain or otherwise fail to vote, but none can vote against a bill proposing such an amendment, and all of the Commission members must approve the proposed amendment before it can be submitted for a vote.
This restricted procedure is reasonable in view of the fact that Amendment 425 provides a limited exception to the requirement that the electorate of the entire state must vote on a proposed amendment to the state constitution. If a proposed amendment is to be submitted to the voters of a single county for incorporation into the constitution, it cannot receive a nay vote from a single member of the legislature or from a single one of the five state officials who constitute the Commission. The Commission’s argument, that a failure by it to approve a *398 one-county vote means that the proposed amendment will be submitted to a statewide vote, is contrary to the plain import of Amendment 425. The same argument would mean that a nay vote in the legislature would send the proposed amendment to a statewide vote: if, as the Commission argues, a failure to achieve a unanimous vote of the Commission sends the amendment to the voters of the entire state, the same reasoning would suggest that if there is an affirmative vote of three-fifths of the members of each house of the legislature (see Amendment 24), but a failure to achieve a unanimous vote, the proposed amendment would be submitted to a statewide vote instead of a single-county vote. Act No. 91-218 states that the election upon the proposed amendment “shall be held in accordance with the provisions of Amendment 425.”[6] The Commission’s argument would result in the election’s being held according to the provisions of Amendment 24 in spite of the explicit contrary language voted on by the legislature. Furthermore, the procedures for proposing and voting on amendments under Amendment 425 are different from those under Amendment 24. See, e.g., Opinion of the Justices No. 329, 568 So.2d 1216 (Ala.1989). Just as a failure by the legislature to meet the strictures of Amendment 425 does not mean that the proposed amendment will proceed as though it had been proposed as a statewide amendment, a failure by the Commission to approve an amendment proposed under Amendment 425 does not cause the proposal to be submitted to a statewide vote, but, rather, in either case, the proposal is defeated.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.

. The holders of these three offices have changed during the pendency of this appeal, but we have retained ffie style of the case as it reached this Court. See Rule 43(b), Ala.R.App.P.

. An amendment to the constitution was necessary because Ala.Code 1975, § 16-11-3, provides that city boards of education are to be elected by the city councils or commissions, and a general law of statewide application can be changed by local law only by constitutional amendment. Alabama Const, of 1901, Art. IV, § 105; Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978); see also Const.1901, amend. 397.

. The Commission is informally called the "Callahan Commission," deriving this name from the original sponsor of Amendment 425 in the legislature, then Senator Sonny Callahan. The bill proposing Amendment 425 was substantially amended in the House through amendments offered by Representative Jack Venable.

. See discussion in text, infra.

. The Commission also usurped the legislature’s role in the amendment process in another way. Because the legislature was mistaken as to the scope of the amendment when it first voted on the amendment, it is not clear that the legislature would give the bill proposing the amendment the necessary three-fifths vote if voting upon it pursuant to Amendment 24.

. We have looked at other acts by which amendments were proposed pursuant to Amendment 425, and they contain similar language.