441 So.2d 864 (1983)
The STATE of Alabama and Don Seigelman, as Secretary of the State of Alabama
v.
Richard S. MANLEY.
Tom BRASSELL, as Comptroller of the State of Alabama
v.
Richard S. MANLEY.
83-1, 83-81.
Supreme Court of Alabama.
November 2, 1983.
Supplemental Dissenting Opinion November 30, 1983.
*865 Charles A. Graddick, Atty. Gen., and L. Tennet Lee, III, Sp. Asst. Atty. Gen., for appellants.
T.W. Thagard, Jr. and David R. Boyd of Balch, Bingham, Baker, Ward, Smith, Bowman & Thagard, Montgomery, for appellees.
Robert Muncaster, pro se.
Joseph H. Johnson, Jr. and David W. Spurlock, Birmingham, and J. Marvin Albritton, Andalusia, and James D. Pruett, Gadsden, and Hugh W. Roberts, Jr., Tuscaloosa, amicus curiae on behalf of Richard S. Manley.
P. Nicholas Greenwood of Bradley, Arant, Rose & White, Birmingham, and Caddell, Shanks, Harris, Moores & Murphree, Decatur, amici curiae for Richard S. Manley.
Lawrence Dumas, Jr., Fournier J. Gale, III, & Cathy S. Wright of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for amicus curiae Associated Industries of Alabama, Inc.
Oakley Melton, Jr., Joe Espy, III and Ken Wallis, Legal Advisor, and Stephen N. Dodd, Asst. Legal Advisor, Montgomery, for Governor George C. Wallace, amicus curiae.
Drayton N. Hamilton, Montgomery, for amicus curiae Alabama League of Municipalities.
William M. Slaughter and Mark E. Ezell of North, Haskell, Slaughter, Young, & Lewis, Birmingham, amicus curiae on behalf of Richard S. Manley.
ADAMS, Justice.
These consolidated appeals are from a declaratory judgment and permanent injunction entered in the Circuit Court for Montgomery County.
On July 25, 1983, the Alabama Legislature passed Act 83-683, which proposed a new constitution for the State of Alabama. The Act provided that the new constitution would be submitted to the electorate for adoption in the same manner as an amendment under § 284, as amended, Alabama Constitution of 1901, at the next general election, to be held November 8, 1983. It also provided that the entire text of the proposed constitution would be published in each county, in a newspaper of general circulation, for four consecutive weeks prior to that election.
The action from which these appeals arise was filed on September 13, 1983. A consolidated hearing pursuant to Rule 65(a)(2), A.R.Civ.P., was held on September 26. The matter was submitted to the trial court on stipulations, the pleadings, briefs of counsel, and oral argument.
Final judgment was entered September 30, 1983, declaring that Act 83-683 is unconstitutional, and enjoining the defendants from proceeding with the election on the adoption of the instrument and from spending any state funds in connection with the submission of the document to the electorate. An appeal was filed on that day. In addition to an appeal on the merits, appellants State of Alabama and Don Siegelman, as Secretary of the State of Alabama, filed a motion to stay the injunction, so that publication could begin pending this court's decision on the merits. On October 3, 1983, following oral argument on the motion, this court granted the stay of the injunction.
A second appeal from the same judgment was subsequently filed by Tom Brassell, as Comptroller of the State of Alabama. The two appeals were consolidated, and in this *866 opinion all appellants are referred to collectively as "the appellant" or "the State."
The State raises the following issues on appeal:
I. Do § 284-287 of the Constitution of 1901 provide the exclusive means by which the constitution may be changed?
II. May the constitution proposed by Act 83-683 be submitted to the people as an amendment to the Constitution of Alabama of 1901?
III. May existing restrictions on the procedure for adopting a new constitution be removed and a different procedure authorized at the same time the new constitution is approved?
We answer the first question "yes." We answer questions two and three "no." The judgment of the trial court is affirmed.

I.
The State cites three cases from other jurisdictions in support of its argument that §§ 284-287 of Art. XVIII of the Constitution of 1901 do not provide the exclusive means by which the constitution may be changed. We shall consider each of these cases in chronological order, indicating our reasons for finding them wholly unpersuasive.

A
The first case is Wheeler v. Board of Trustees of Fargo Consolidated School District, 200 Ga. 323, 37 S.E.2d 322 (1946). In Wheeler, the Supreme Court of Georgia considered whether the Georgia Legislature's proposal to the electorate of a new constitution was a permissible manner of revising the constitution. The court concluded that it was. Nevertheless, we do not think it correct to accord that decision any weight in deciding the case now before us, for the facts of this case are readily distinguishable from those in Wheeler.
The constitution in Wheeler had been ratified by the people of Georgia in a general election prior to the attack on its validity. The court indicated that "every reasonable presumption, both of law and fact, is to be indulged in favor of the validity of a constitution when it is attacked after its ratification by the people." 200 Ga. at 333, 37 S.E.2d at 329. In accordance with this rule, the court in Wheeler chose to presume that the people of Georgia had not intended to limit themselves to use of the convention method for providing a new constitution by any provisions in their 1877 constitution. 200 Ga. at 334, 37 S.E.2d at 329.
The constitution proposed by our legislature is not to be accorded such a presumption as that in Wheeler. It has not been approved by a majority vote of the people of Alabama. Therefore, we think that the "authoritative value" of Wheeler is greatly lessened. Smith v. Cenarrusa, 93 Idaho 818, 828, 475 P.2d 11, 21 (1970) (McFadden, C.J., dissenting).
The opinion in Wheeler also suffers from inclusion of the flawed reasoning that the will of the people, expressed by their vote in a "legally held election," obviates a concern as to whether procedures for the proposal of constitutional change that are specified in the constitution are followed. 200 Ga. at 334, 37 S.E.2d at 329. The Wheeler court expressed a belief that if it voided the new constitution because of the legislature's failure to effect the proposal of change by one of the means delineated in the constitution, it would be limiting the sovereign power of the people. 200 Ga. at 331, 37 S.E.2d at 328. Such thinking is indisputably contrary to this court's holding in the case of Collier v. Frierson, 24 Ala. 100 (1854), that failure to comply strictly with the amendment procedure required by the constitution is "fatal" to a resolution of the legislature, a favorable vote of the people notwithstanding.

B
Gatewood v. Matthews, 403 S.W.2d 716 (Ky.1966), was cited by appellant in support of its argument that §§ 284-287 of the Constitution of 1901 do not define the exclusive means by which the Constitution *867 may be changed.[1] In Gatewood the Kentucky Court of Appeals considered whether by provisions in their constitution the people had "imposed upon themselves exclusive modes of amending or of revising their Constitution." 403 S.W.2d at 718. The court concluded that they had not done so.
The majority of the court in Gatewood relied upon the opinions rendered in the case of Wheeler v. Board of Trustees of Fargo Consolidated School District, supra, and In re Opinion to the Governor, 55 R.I. 56, 178 A. 433 (1935), in deciding that the provisions in the Kentucky constitution, which are similar to those of the Constitution of 1901 here in question, were not the only methods available for altering the constitution. Having previously outlined the deficiencies of the Wheeler opinion, we address directly Gatewood's reliance on the Rhode Island opinion.
The majority in Gatewood correctly noted that the Rhode Island Supreme Court, in the above-named opinion to the Governor, held that the amendatory language of its constitution did not specify the exclusive mode of revision.[2] However, even a cursory reading of the Rhode Island Supreme Court's decision necessitates the conclusion that the court did not approve of legislative circumvention of the established processes of constitutional revision, as attempted by the Kentucky legislature in Gatewood, and by our legislature in the instant case.
In its 1935 opinion to the Governor, the Rhode Island Supreme Court was required to construe Section 1 of Article I of its constitution, which read as follows:
In the words of the Father of his Country, we declare that "the basis of our political systems is the right of the people to make and alter their constitutions of government; but that the constitution which at any time exists, till changed by an explicit and authentic act of the whole people, is sacredly obligatory upon all."
In re Opinion to the Governor, 55 R.I. at 61, 178 A. at 436. The court interpreted this language in pari materia with the last sentence of Section 1 of Article IV, which read, "The General Assembly shall pass all laws necessary to carry this constitution into effect." 55 R.I. at 61, 178 A. at 437. The court concluded that pursuant to these sections of the constitution "it is the duty of the general assembly to pass whatever laws may be needed, at any time or from time to time, to enable the people by an explicit and authentic act to make a new constitution or to alter the present one." 55 R.I. at 63, 178 A. at 437-38.
The court's clarifications of the above holding concerning the Rhode Island legislature's responsibility in the formulation of a new constitution, as stated in the following excerpts from the opinion, clearly indicate that our legislature has proposed the revision of the Constitution of 1901 in an unconstitutional manner. The court said:

The method of doing this [that is, the general assembly's means of satisfying its duty], which had been recognized as the regular and ordinary method and which had been used before 1843 by many states, when there was no provision for it in their constitutions, was first, by the holding of a convention under a legislative enactment, second, by the framing of a new constitution or the revision of the existing one and third, by the adoption of such new constitution or revision by the people at an election provided for by law. It is also well settled that no other method can be legally employed for amending or revising a constitution or substituting *868 another one for it, unless such other method is expressly provided for in the constitution itself.

55 R.I. at 63-64, 178 A. at 438 (Emphasis added).
The court said further:
There is no inconsistency whatever between the power of a legislature to provide for calling a convention, to be chosen by the people, for revising a constitution or drafting a new one, and to provide that a revision or new constitution so made shall be submitted to the people and become operative, if adopted by a majority vote, and another power in the legislature, by following a prescribed procedure, to propose directly to the people an amendment or amendments of the existing constitution. The two powers are suitable for different purposes, the former to a general revision of a constitution or the making of a new one, the latter to the making of a special and particular amendment or a few of them, where the matter is relatively simple. That they are not inconsistent is shown by the fact that very frequently both powers have been provided for in the same constitution. With both powers the main sanction is the vote of the people, but with the former the matter voted on by the people is framed by a convention, the members of which are specially chosen by the people for that purpose only and assigned to that one task, and the only function of the general assembly is to provide for this to be done; with the latter the matter voted on by the people is framed by the general assembly whose chief function is to perform general legislative duties.
55 R.I. at 67-68, 178 A. at 439. See 55 R.I. at 82-83, 178 A. at 445-46; 55 R.I. at 93-94, 178 A. at 450, citing J. Jameson, Constitutional Conventions § 574c (4th ed. 1887). Moreover, the court quoted from this court's opinion in Collier v. Frierson, supra, in support of its decision to overrule an earlier opinion of the court:
"The constitution can be amended in but two ways, either by the people, who originally framed it, or in the mode prescribed by the instrument itself.... We entertain no doubt, that, to change the constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment."
55 R.I. at 89, 178 A. at 448, citing 24 Ala. 100, 108-109.
As indicated by counsel for appellant during oral argument before this court, In re Opinion to the Governor is cited in this court's opinion in the case of City of Bessemer v. Birmingham Electric Co., 252 Ala. 171, 40 So.2d 193 (1949). Counsel correctly noted that In re Opinion to the Governor held that "the legislature has the power to call a constitutional convention even though the constitution does not specifically provide for the calling of a convention by the legislature." City of Bessemer v. Birmingham Electric Co., 252 Ala. at 176, 40 So.2d at 197, citing In re Opinion to the Governor, supra. However, counsel mistakenly relies on the cases for the proposition that if the legislature has the authority to call a constitutional convention without a specific constitutional provision to such effect, then surely it has the authority to propose a new or revised constitution to the people. This argument distorts the concept of the plenary power of the legislature as the arm of the state to which the legislative power has been given by the people, which is discussed in both In re Opinion to the Governor and City of Bessemer v. Birmingham Electric Co., and the authorities cited in those cases.
As discussed above, Rhode Island's In re Opinion to the Governor indicates that no method for revising the constitution exists independently of a specific constitutional provision, except the general assembly's authority to call a constitutional convention. 55 R.I. at 63-64, 178 A. at 438. This court, in City of Bessemer v. Birmingham Electric Co., relied in part on In re Opinion to the Governor for the fundamental proposition that the "plenary power" of the general assembly, "as the arm of the state to which legislative power has been delegated by the *869 people," enables it "to call a convention," and to provide for various incidences precipitated by the convention and its work. 252 Ala. at 176, 40 So.2d at 197. This court recognized no authority for constitutional revision existing within the "plenary power" of the legislature, except to call a constitutional convention, which those authorities cited by the court in addition to In re Opinion to the Governor also acknowledge.
According to Jameson, sections of whose treatise on constitutional conventions were cited by this court in City of Bessemer v. Birmingham Electric Co., 252 Ala. at 176, 40 So.2d at 197, the authority of a legislature must be distinguished from that of a convention with regard to the changes in fundamental law it may propose:
Saving the single case, ... in which, by express constitutional provision, [our legislatures] act in a conventional capacity, in the way of recommending specific amendments to their Constitutions, they have no power whatever to amend, alter, or abolish those instruments.
Jameson, Constitutional Conventions § 371 (1887). (Emphasis added.) Jameson's subsequent amplification of the idea of a legislature acting in a "conventional capacity" underscores the limited nature of a legislature's ability to participate in constitutional revision, especially when a state's constitution has separate provisions for the proposal of amendments by the legislature and the calling of a convention to revise the constitution, as is true of the Alabama Constitution of 1901. He wrote:
Now, it is very clear on the face of the constitutional provisions authorizing amendments through the agency of the legislature, as compared with those authorizing the call of Conventions, that the purpose of the former is different from that of the latter; in other words, the thing authorized to be done by the one class of provisions is a different thing from that authorized to be done by the other. Thus, the purpose of the legislative mode is to bring about amendments which are few and simple and independent; and on the other hand, that of the mode through Conventions is to revise the entire Constitution, with a view to propose either a new one, or, as the greater includes the less, to propose specific and particular amendments to it. Where a few particular amendments only are desired, if the Constitution provides for both modes, the legislative mode should be employed; but if a revision is or may be desired, the mode by a Convention only is appropriate, or, as we expect to show, permissible. For, note that the phraseology used in authorizing the former mode is in every case, without exception, "any amendment or amendments" may be proposed by the General Assembly; that of the latter is, "if at any time it shall seem necessary to the General Assembly to revise the Constitution," it shall have power to call a Convention, which shall meet "to revise, alter, or amend" the same. Now, in not a single instance is the word "revise," or any of its derivatives, employed with reference to the legislative mode, but only the words "amendment," "amendments," or "alterations." On the other hand, in a large majority of the cases in which authority is given to call Conventions, the purpose of calling them is stated to be "to revise," or "to revise, alter, or amend" the existing Constitution. The language is sometimes still more explicit, the Convention being expressly empowered to make "a revision of the entire Constitution." But this is not all. As if to leave no room for doubt that a distinction was intended between the things authorized to be done by the two classes of provisions, in twenty-six of the thirty-four cases in which the word "revise" or "revision" is used in specifying the duty of the Conventions which should be called, the Constitutions contain also an express authorization to make amendments therein in the legislative mode. It seems impossible to escape the conclusion that in these twenty-six cases, the framers of the Constitutions did not suppose they were providing for doing the same thing in both the modes authorized by them. We thus see that the legislative mode is limited to the *870 cases where an amendment or amendments are desired, and the mode by Conventions to those in which a broader purpose is entertained, namely, that of a revision of the whole Constitution, with the purpose of proposing either, first, a new one, or, secondly, the old one, if on the whole satisfactory, but with such amendments as to the Convention should seem desirable. In other words, the legislative mode is confined to a narrow and defined purpose, and that by Conventions to a broader and more general and undefined purpose, embracing within its scope the former, and possibly much more. To say, then, that the purpose of the two modes is the same, is to say that a part is equal to, or the same as, the whole.
Jameson, Constitutional Conventions § 574c.[3] The logic of this analysis clearly dictates the invalidation of the Legislature's action in this case.
The case of Wells v. Bain, 75 Pa. 39 (1874), also cited by this court in City of Bessemer v. Birmingham Electric Co., involved the question of what method of constitutional change was available as an alternative to the legislature's proposal of an amendment.[4] Construing a declaration of rights that is similar to that contained in our present constitution insofar as it concerns the inalienable right of the people to change their form of government in such manner as they wish, the Supreme Court of Pennsylvania said:
The words "in such manner as they may think proper," in the declaration of rights, embrace but three known recognised modes by which the whole people, the state, can give their consent to an alteration of an existing lawful frame of government, viz.:
1. The mode provided in the existing constitution.
2. A law, as the instrumental process of raising the body for revision and conveying to it the powers of the people.
3. A revolution.
The first two are peaceful means through which the consent of the people to alteration is obtained, and by which the existing government consents to be displaced without revolution. The government gives its consent, either by pursuing the mode provided in the constitution, or by passing a law to call a convention. If consent be not so given by the existing government the remedy of the people is in the third moderevolution.
When a law becomes the instrumental process of amendment, it is not because the legislature possesses any inherent power to change the existing constitution through a convention, but because it is the only means through which an authorized consent of the whole people, the entire state, can be lawfully obtained in a state of peace. Irregular action, whereby a certain number of the people assume to act for the whole, is evidently revolutionary.
75 Pa. at 47, cited in In re Opinion to the Governor, 55 R.I. at 84, 178 A. at 446. *871 Mindful of this authority, we think the Legislature's "irregular action" is unconstitutional and invalid.

C
The State also relies on the case of Smith v. Cenarrusa, 93 Idaho 818, 475 P.2d 11 (1970), as support for its argument that §§ 284-287 of the Constitution of 1901 do not define the exclusive means by which the constitution may be changed. In Smith v. Cenarrusa, the Supreme Court of Idaho considered whether the methods prescribed in the Idaho Constitution for its revision were the sole and exclusive methods.[5] In reaching its conclusion that a legislative resolution, which the court declared was not an amendment, was a permissible means for placing before the people a new or substantially revised constitution, the court relied heavily upon the Wheeler and Gatewood cases. Insofar as the facts of Wheeler are as unlike those in Smith v. Cenarrusa as they are those in this case (as discussed previously), and for the reasons that we found Gatewood ill-reasoned, we find the majority opinion in Smith unpersuasive.[6]

D
We now turn to a consideration of this court's leading decisions on the permissible methods for the amendment, alteration, or revision of the constitution. In the case of Collier v. Frierson, 24 Ala. 100 (1854), this court considered whether any method of constitutional alteration other than legislative amendment, the procedure for which was specifically outlined in the Alabama Constitution of 1819, was proper.[7] This question was raised by the fact that the legislature had failed to comply with all the requirements of the constitution for a legislative amendment, yet a favorable vote of the people had been secured for the amendment in question.
Holding that the amendment was not constitutionally ratified, and was therefore invalid, the court declared:
We entertain no doubt, that, to change the constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment.
24 Ala. 109, cited in Ellingham v. Dye, 178 Ind. 336, 397, 99 N.E. 1, 23 (1912).
In addition to being in accord with those later authorities which we have cited approvingly above, the court's recognition that a convention is the only peaceful extraconstitutional method of changing the constitution reflected the prevailing thought of constitution-makers at the time the Alabama Constitution of 1819 was framed. Such thought was well expressed by Daniel Webster, who served as both a delegate and chairman of the committee on future amendments at the 1820 Constitutional Convention of Massachusetts. Explaining the reason for his committee's favorable report on a provision for the legislative proposal of amendments without reference to a convention, Mr. Webster remarked:
It occurred to the committee that, with the experience which we had had of the Constitution, there was little probability that, after the amendments which should now be adopted, there would ever be any occasion for great changes. No revision of its general principles would be necessary, and the alterations which should be called for by a change of circumstances would be limited and specific. It was, therefore, the opinion of the committee that no provision for a revision of the whole Constitution was expedient, and the only question was in what manner it should be provided that particular amendments might be obtained. It was a natural course, and conformable to analogy and precedent in some degree, that every *872 proposition for amendment should originate in the legislature under certain guards and be sent out to the people.
Deb.Mass.Conv.1820, 413-414, cited in Ellingham v. Dye, 178 Ind. at 372, 99 N.E. at 14. Although wishful thinking obscured the prospect of a future constitutional convention, Mr. Webster's statement leaves no doubt concerning the common understanding of the legislature's restricted participation in altering the Constitution.
With such a historical perspective on the limited role of state legislatures in the process of constitutional change, it is clear to us that the Collier court's invalidation of the legislature's proposal of an amendment that was in less than strict conformity with the constitutional prerequisites was soundly premised upon an intention to preserve the convention as the sole method for extra-constitutional change of the constitution. As this court said:
The constitution is the supreme and paramount law.The mode by which amendments are to be made under it is clearly defined. It has been said, that certain acts are to be donecertain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them. To do so, would be to violate the instrument which they are sworn to support....
24 Ala. at 109 (emphasis added), cited in Ellingham v. Dye, 178 Ind. at 397, 99 N.E. at 23. Similarly, the Indiana Supreme Court has said:
The presence of this article [a provision of the Indiana constitution regarding legislative proposal of amendments, similar to Article XVIII, Section 284, of the Alabama Constitution of 1901] fights against the contention that the general grant of legislative authority bears in its broad arms, by implication, any power to formulate and submit proposed organic law, whether in the form of an entire and complete instrument of government to supersede the existing one, or a single amendment. For if the General Assembly has the greater power, unfettered power, under the general grant, what necessity could there have existed for giving the lesser, special power, with the checks and limitations accompanying it?

Ellingham v. Dye, 178 Ind. at 356, 99 N.E. at 8, cited in Smith v. Cenarrusa, 93 Idaho 818, 826, 475 P.2d 11, 19 (1970) (McFadden, C.J., dissenting); accord Gatewood v. Matthews, 403 S.W.2d 716, 723-24 (Ky.1966) (Hill, J., dissenting). Thoughtful consideration of these authorities, and those referred to earlier, mandates our conclusion that the proposal of a new constitution impermissibly exceeds the Legislature's authority under the constitution.
Each of Alabama's five constitutions after the Constitution of 1819, including our present constitution, has explicitly provided for the calling of a constitutional convention. (For the texts of those provisions, See T. Skinner, Alabama Constitution Annotated, 934-35 (Constitutions of 1861, 1865, and 1868), 946 (Constitutions of 1875 and 1901).) In each of these constitutions, a procedure for calling a convention is specified in the instrument, making part of the fundamental law the process by which the people exercise their inalienable right to have a convention of their delegates convened for the purpose of altering or revising the constitution. The Constitution of 1861 only required a two-thirds vote of each branch of the general assembly for the calling of a convention. Id., at 934-35. In each of the later constitutions, a majority vote of the qualified electors is needed to call a convention.[8]
*873 In the case of Johnson v. Craft, 205 Ala. 386, 87 So. 375 (1921), this court considered whether a legislatively proposed amendment that had not been submitted for an election in the manner prescribed by the Constitution of 1901 was valid. The court, relying on the earlier decision in Collier v. Frierson, declared the amendment to be unconstitutional.
Justice McClellan, writing for a majority of the court, stated that the Constitution of 1901, namely "the instrument itself[,] prescribes the exclusive modes by which it may be altered or amended, or its effect and operation changed." Johnson v. Craft, 205 Ala. at 393, 87 So. at 380 (emphasis added). He recognized that the convention mode of revising the constitution, having been specifically provided for in the Constitution of 1901, had ceased to be an extra-constitutional method, as it had been at the time of the decision in Collier v. Frierson. He continued:
Otherwise than as these exclusive modes contemplate and authorize the Constitution's alteration, its character is permanent, its force and influence enduring. Both of these exclusive modes are plainly stated in sections 284-287 of the Constitution. Only through a constitutional convention, called and convened as provided in the existing organic law, or through amendment proposed and adopted as provided in the existing organic law, can the Constitution be altered or changed.
205 Ala. at 393, 87 So. at 380, cited in Opinion of the Justices, 252 Ala. 205, 207, 40 So.2d 623, 625 (1949); Downs v. City of Birmingham, 240 Ala. 177, 182, 198 So. 231, 234 (1940). Finding that the proposal in question was not the product of a constitutional convention, nor an amendment properly adopted pursuant to the procedure specified by the constitution, the Johnson court invalidated it. Likewise, we are required to declare unconstitutional the actions of the Legislature in this case. Sections 284-287 of the Constitution of 1901 do provide the exclusive means by which the constitution may be changed, short of revolution.

II.
The State in oral argument virtually concedes that the instrument proposed by Act 83-683 is not an amendment. It argues in its brief, however, that, in the event this court should conclude that a constitutional convention organized under § 286 is the only means by which a "new constitution" may be adopted, there is no reason why the instrument cannot be considered an amendment. For this proposition the State relies on Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231 (1940), which states:
But the character or nature of an amendment is not prescribed. It may extend to a "change [in the] form of [the] government." Section 2, Constitution. This may be in any respect, except that it must continue to be a "republican form", Article IV, section 4, Constitution of the United States; Luther v. Borden, 7 How. 1, 12 L.Ed. 581, must not impair the obligations of contracts, nor otherwise violate section 10, Article I of the Constitution of the United States, nor violate the Fourteenth Amendment of the constitution of the United States, nor any other provision of it.
Every proposal which effects a change in the Constitution or adds or takes away from it is an amendment. 16 Corpus Juris Secundum, Constitutional Law, § 7, p. 31; 11 Am.Jr. 629, sections 24-25. It need not be germane to any other feature of it, nor to the feature which is thus amended, provided it is clear and definite in its provisions. 16 Corpus Juris Secundum, Constitutional Law, § 7, p. 31.
240 Ala. at 182-183, 198 So. at 234-235.
We note that in Downs the court was considering whether a feature of the Constitution could be suspended for a definite, limited time by an amendment.
We have no quarrel with the statements quoted above, as to what subjects may be altered by amendment. However, whether an entire constitution may be revised as one amendment, when numerous changes on a great many different subjects are involved, *874 is an entirely different question. As stated in Wheeler v. Board of Trustees, supra:
It seems to us that the instrument now under consideration discloses by its own terms the answer to the question we now have for determination. The very first paragraph repeals in its entirety the constitution of 1877, and then proceeds to create a new constitution. When a house is completely demolished and another is erected on the same location, do you have a changed, repaired and altered house, or do you have a new house? Some of the material contained in the old house may be used again, some of the rooms may be constructed the same, but this does not alter the fact that you have altogether another or a new house. We conclude that the instrument as contained in Ga.L. 1945, pp. 8 to 89, inclusive, is not an amendment to the constitution of 1877; but on the contrary it is a completely revised or new constitution. We will hereafter refer to the instrument as the constitution of 1945.
200 Ga. at 330, 37 S.E.2d at 327.
Alabama Act 83-683, in its title and first section, reads:
An Act [t]o propose a new constitution for the State of Alabama to replace the Constitution of 1901, as amended.
....
Section 1: The following constitution is proposed and shall replace the Constitution of 1901, as amended, when approved by the qualified electors and proclaimed by the Governor as prescribed by law.
In addition, Article XVIII of the proposed constitution distinguishes between the Constitution of 1901 and "this Constitution." Section 208, contained in that article, provides that the Constitution of 1901, as amended, "shall have no force or effect after the adoption of this Constitution, except as provided elsewhere in this Constitution."
Thus, it is clear that, if the constitution proposed by Act 83-683 went into effect, the Constitution of 1901 would be repealed. But that constitution, in § 284, provides that if proposed amendments receive a favorable vote from a majority of the electors voting, "such amendments shall be valid to all intents and purposes as parts of this Constitution." Would the instrument proposed, then, become a part of the "Constitution of 1901, as repealed"?
As this court has noted, "to destroy is not to amend. A thing amended survives." City of Ensley v. Simpson, 166 Ala. 366, 376, 52 So. 61, 65 (1909).
In addition to the Georgia court in Wheeler, quoted above, several supreme courts of other jurisdictions have held that a "new constitution" is not an "amendment" to an existing constitution. Holmes v. Appling, 237 Or. 546, 392 P.2d 636 (1964), involved a section of Oregon's constitution which allowed citizens to propose constitutional amendments by initiative petition. Certain citizens tried to obtain a place on the ballot for an instrument entitled "A Proposed Amendment," but which stated:
The Constitution of the State of Oregon is amended by adoption of the following Constitution of the State of Oregon in lieu of the Constitution of the State of Oregon of 1859, as amended, which is repealed.
See Holmes v. Appling, 237 Or. at 552-553, 392 P.2d at 639. The court in that case stated:
[T]he measure sponsored by the plaintiffs is ... a thorough overhauling of the present constitution and a complete constitution, commencing with the customary "The people of Oregon ordain this Constitution," and including an article providing for the transition period between the date of its adoption and the day it was to go into effect. It is 56 typewritten pages in length. It contains many and important changes in substance, many others in language, removing ambiguities and correcting errors, and still others in the arrangement of its various provisions.
To call it an amendment is a misnomer.
237 Or. at 552, 392 P.2d at 639. The court went on to conclude that the matter could *875 not be submitted to the people through initiative procedure.
In Rivera-Cruz v. Gray, 104 So.2d 501 (Fla.1958), the Florida Supreme Court considered a situation in which the legislature passed fourteen joint resolutions, proposing to "amend" the preamble and every article of the state constitution. Each amendment contained the requirement that it not be effective unless all fourteen were approved. The Florida court held that the amendment section was intended to deal with the change of parts, and not the whole of the constitution, and that in the case before them the amendment section was being used to circumvent the requirements for revision. See, also, McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948); In re Opinion to the Governor, supra; Ellingham v. Dye, supra.
We have found no case, and the State has pointed out none, where such a major overhaul of a state constitution as the one before us has been declared to be an amendment. The reasoning of the above cited cases confirms our opinion that the instrument proposed in Act 83-683 is not an amendment for purposes of § 284.

III
The State's final argument is that, if the legislature has acted beyond its authority in proposing a new constitution to the people, the electorate may grant such authority by ratification at the same time it passes the new constitution. It bases this argument on the fact that § 203 of the proposed constitution begins: "Amendments to this Constitution or a new Constitution may be proposed by the Legislature or by a constitutional convention as provided in this article." (Emphasis added.) From this the State concludes that if the people approve the new constitution they will at the same time be ratifying the means by which it was approved, and any such approval would be binding.
We have already pointed out, in our discussion of Wheeler v. Board of Trustees, supra, that the case before us is readily distinguished from one in which the proposed constitution has already been favorably voted on by the electorate. The State notes the Opinion of the Justices, 263 Ala. 158, 81 So.2d 881 (1955), calling our attention to that opinion's citation from 16 C.J.S., Constitutional Law, § 7:
"It is not essential to the validity of an amendment which in effect modifies a constitutional limitation that the limitation be first changed, as the amendment itself works the change" ....
The quotation from that Opinion of the Justices, still quoting the same section of 16 C.J.S., Constitutional Law, continues:
... and "The power to amend a constitution includes the power to repeal a provision thereof, and a repealing amendment must be adopted in the same manner as any other amendments."
263 Ala. at 163, 81 So.2d at 886. In the Opinion of the Justices, the question under discussion concerned whether an amendment changing the basis of representation in the legislature, as provided in § 284, could, at the same time, repeal the last sentence of § 284, which includes the instruction that such basis of representation shall not be changed by constitutional amendments. This court, citing the above-quoted passage from C.J.S., stated:
The bill properly provides for the calling of the election, proclamation and notice, and if ratified by the electorate would become a part of our Constitution. With the repeal of the last sentence of Section 284, there is nothing in the proposal which contravenes the provisions of said section. This last statement is of course based on the premise that the people would, at the election, ratify the proposal containing the repeal of the last sentence of Section 284.
Id.
The question before the Justices in that opinion is easily distinguishable from the one now before us. It is clear that the Justices were dealing with a single amendment concerning the alteration of one sentence of the constitution. We have already stated that the instrument before us is not an amendment. Even if it is proper to *876 amend the basis of representation and to repeal the injunction against such amendment at the same time, when the basis to be amended and the injunction both appear in the same sentence, the situation is inapplicable in this case. Here, we are being asked to allow the inclusion of one sentence in § 203 of a new constitution containing 222 sections to validate an otherwise unauthorized action of the legislature. This we are not willing to do. If the proposed constitution were allowed to go before the electorate on this theory, there is a great danger that only a minority of the voters would be aware of the existence of this particular provision of § 203, let alone of the magnitude of its importance. If other portions of the document happened to find favor with the voters, the unauthorized method could be "validated" without the knowledge of the majority of voters that they had thereby greatly enlarged the power of the legislature. On the other hand, if the document were rejected by the voters, it seems highly unlikely that the legislature would conclude that it must return to the procedures outlined in § 286 in order to secure a new constitution. Rather, it would probably conclude that it needed only to write another constitution, hopefully more acceptable to the electorate, and include a sentence similar to the one quoted from § 203, above, hoping for "validation" this time.
We have no doubt that if the electorate voted in favor of an amendment to § 284, clearly giving the legislature the right to propose a new constitution under the procedure outlined in that section, such amendment would be effective to allow the legislature to act in the manner in which it attempted to act in this case. But until such time as that amendment is passed, the legislature's power to initiate proceedings toward a new constitution is limited to the provisions of § 286.
We take judicial notice of the Final Report of the Alabama Constitutional Commission, submitted May 1, 1973. In that report the commission proposed a new constitution for the legislature's consideration, suggesting:
The legislature is free to adopt all or any part of the proposed revision for direct submission as amendments; it could submit the entire draft of the revised constitution for ratification; or it may call a convention to review the draft with whatever changes the legislature may make.
The Commission then continued:
The Commission believes that there may be doubts under Article XVIII of the present constitution whether more than one article could properly be submitted directly by the legislature, as one amendment, or at least whether an entire new constitution could be so submitted. Any doubts as to this might be resolved by an advisory opinion of the Supreme Court, or the commission's revision of the amending article could be submitted first as a separate amendment.
In view of the fact that a complete revision of the constitution is proposed, consideration of the proposed changes by the legislature will necessarily require a substantial amount of the time of committees and of each house. The Commission therefore suggests that a more thorough consideration could be given, without distraction from important regular legislative matters, if the draft could be considered by the legislature at a special session called solely for that purpose. The necessary amendment to the amending article, and possibly one or two independent articles, such as the judicial article, could, in the meantime, be submitted to the regular session, thus paving the way for submission of the rest of the revised constitution in whatever manner the legislature may decide.
Final Report of the Alabama Constitutional Commission (1973), pp. v-vi.
History shows that the legislature took no action on the Final Report of the Alabama Constitutional Commission, except as regards the judicial article. In 1983, the amending article was not submitted to the people prior to the passage of Act 83-683, nor was an advisory opinion of this court *877 requested regarding the matter. We hold that the right of the people, acting through their delegates elected for that single purpose, to propose their own organic law, cannot be altered in the manner here undertaken. Until the people decide, either by amendment or by a new constitution written by their delegates and approved by them, to delegate the power of complete revision to the legislature, the provisions of § 286, Constitution of 1901, must be observed in proposing a new constitution.
For all the foregoing reasons, the judgment of the trial court is affirmed, and this court's order staying enforcement of the injunction in this case is dissolved.
AFFIRMED; STAY OF INJUNCTION DISSOLVED.
MADDOX, FAULKNER and EMBRY, JJ., concur.
TORBERT, C.J., concurs specially.
JONES, J., concurs in the result.
ALMON, SHORES and BEATTY, JJ., dissent.
TORBERT, Chief Justice (concurring specially).
While I agree that Justice Adams's opinion correctly answers the questions presented in this appeal, I feel it useful to write separately to emphasize my own views on those questions. Particularly, I think it should be emphasized that this Court's decision is merely a recognition of the powers the people have reserved to themselves. Also, I would point out that in reserving to themselves alone the sovereign right and power to frame their own government, the people of Alabama have not acted differently from the people of other states of this Nation, and that this decision, rather than thwarting the people's right to choose their constitutional law, protects that very right. The people of this State, through their Constitution of 1901 ("Constitution"), have decreed that they reserve, in revising or replacing the Constitution, a role much more active than merely passing upon a proposal someone else has written.
Under our theory of government, all power is inherent in the people. Ware v. Hylton, 3 Dall. 199, 3 U.S. 199, 1 L.Ed. 568 (1796); Ala. Const. art. I, § 2; Opinion of the Justices, 263 Ala. 158, 81 So.2d 881 (1955). The Constitution is the framework for the people's plan of self-government. The people of Alabama have in the Constitution granted a certain measure of their inherent, indefeasible power to the various branches of government. While the Constitution makes a grant of certain limited powers to the branches of government, it is, at the same time, a restriction on those branches of government. Johnson v. Craft, 205 Ala. 386, 87 So. 375 (1921); Opinion of the Justices, 254 Ala. 183, 47 So.2d 713 (1950).
That the people are the ultimate source of power is made clear by Ala. Const. art. I, § 2, which provides that "all political power is inherent in the people," and that the people have the "inalienable" right to change the form of their government to whatever form or in whatever particular manner they may deem expedient. The central question to be answered on this appeal is whether the people have by the Constitution granted to the Legislature the power to directly propose a new organic law for the people, or whether the people have reserved to themselves the power to rewrite the organic law.
There is a difference between the power of the Legislature to enact statutes and the power to change the Constitution. Jones v. McDade, 200 Ala. 230, 75 So. 988 (1917). In Bourbon v. Governor of Maryland, 258 Md. 252, 257-58, 265 A.2d 477, 480 (1970), the Maryland Court of Appeals, considering the legislature's role in initiating constitutional change, wrote:
"[T]he legislature does not exercise its ordinary legislative power or any sovereignty of the people that has been entrusted to it but acts under a limited power which the people have conferred upon it and which with equal propriety and appropriateness might have been conferred upon either house, the governor, a special commission or other body or *878 tribunal. In proposing amendment of the Constitution the legislature does not have the plenary powers it has in enacting laws but only the powers specifically delegated to it."
(Citations omitted). The Legislature has plenary power with respect to statutory matters, but only a limited power as to constitutional matters. Johnson v. Craft, 205 Ala. at 386, 87 So. at 375; Opinion of the Justices, 252 Ala. 89, 39 So.2d 665 (1949). In regard to its powers to change the Constitution, the Legislature, as the representative of the people, has only those powers specifically granted by the people through the Constitution. Opinion of the Justices, 254 Ala. at 183, 47 So.2d at 713. I think it clear that in the absence of specific constitutional provisions allowing for amendment or revision, the only method of proposing change in the Constitution is by action of a convention, not by legislative initiative, although the Legislature would be a proper authority to set in motion the convention process. Cf. City of Bessemer v. Birmingham Electric Co., 252 Ala. 171, 40 So.2d 193 (1949); J. Jameson, Constitutional Conventions § 528 (4th ed. 1887) ("[I]t is clear that no means are legitimate for the purpose indicated [constitutional change] but conventions, unless employed under an express warrant of the Constitution"). We must, therefore, determine exactly what powers the people, through the Constitution, gave the Legislature in the area of constitutional change.
Article XVIII, § 284, as amended by Amendment 24, gives the Legislature the power to propose amendments to the people for their approval. The very limited nature of this power is reflected in this Court's decisions holding that amendments not proposed precisely according to the procedure set out in § 284 are invalid. Collier v. Frierson, 24 Ala. 100 (1854); Johnson v. Craft, 205 Ala. at 394, 87 So. at 381; Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231 (1940). In this regard, I think the majority opinion correctly answers the contention that the proposed Constitution is in fact only an amendment to the present Constitution. That was an issue of fact and law, properly decided, I think, in the trial court. To hold that the proposed document is merely an amendment would be to fail to recognize that the Constitution distinguishes between "amendment" and "revisions."
Further in this regard, I must observe that the Legislature could have directly proposed a revised constitution under the procedure it has attempted to use, if it had first proposedand obtained the people's approval ofan amendment to the Constitution granting the Legislature that power. It is of more than casual interest to note that the proposed constitution contains a provision (§ 203) which would expressly allow the Legislature to directly propose a new constitution. The presence of that express grant of power in the proposed constitution makes more conspicuous its absence in the present Constitution.
The only other power the people have granted to the Legislature in this area is the authority to call a constitutional convention. Ala. Const. art. XVIII, § 286. This grant of power is also severely limited. The Legislature is authorized to convene such an assembly only if the people first express their desire, through a majority vote, to have a convention. While § 286 allows the Legislature to propose to the people the question of whether they want a convention, the decision to have or not have one is entirely up to the people.
All powers being inherent in the people, any power not granted to some branch of government remains in the people. Ala. Const. art. I, § 2; cf. Opinion of the Justices, 263 Ala. at 158, 81 So.2d at 881. The people can exercise their inherent power to revise the Constitution or to write a new one; they exercise that power through a convention. That is the method the people themselves have prescribed in the Constitution; and that is the only method allowed. Only § 286, providing for conventions, speaks of "revisions" to the Constitution; § 284, providing for direct proposals by the Legislature, speaks only of alterations or amendments. Given the juxtaposition of *879 § 284 and § 286, and the finely detailed methods set out therein for the Legislature to propose the "altering or amending" of the Constitution and for a convention to propose the "altering, revising, or amending" of the Constitution, I am persuaded that the people intended to reserve to themselves the power of general revision. Of course, this case does not call for this Court to consider, even in light of modern trends, the possible wisdom or convenience of granting that power to the Legislature.
As the Constitution is the very basis of our form of government, it should not be tampered with lightly. "The wisest statesmen of the time saw that, in a country where the people were admitted to a direct participation in the government, party passions and interests would be likely to lead to too much tampering with Constitutions, if effectual checks were not interposed." J. Jameson, supra, § 526. Judge Jameson, in his impressive work on constitutions and constitutional conventions, also commented on why legislatures are given the power to directly propose amendments while only conventions have the power to make more sweeping change:
"For amendments of such a stamp, [i.e., those involving a change in `qualifications for the suffrage,' `the construction to be put upon a particular clause,' `a new distribution among the agencies of government,' etc.] separately considered, the mode by legislative action is well adapted; and it is adapted to no other. It ought to be confined, it is believed, to changes which are few, simple, independent, and of comparatively small importance. For a general revision of a Constitution, or even for single propositions involving radical changes as to the policy of which the popular mind has not been informed by prior discussion, the employment of this mode is impracticable, or of doubtful expediency."
J. Jameson, supra, § 540. Judge Jameson went on to explain why the framers of constitutions would prefer that a convention, rather than a legislature, draft a new constitution:
"It is not necessarily because such a body is recognized to be, as it is, the most important ever assembled in a State, but because the measures it is expected to mature bear less directly on the interests of parties or of individuals. Party management, therefore, is not usually so much directed to the seeking of control of a Convention as of a legislature. Besides, the proper function of the latter body, that of municipal legislation, being one of the highest vested by the sovereign in any governmental agency, it cannot but be inexpedient, on a general view, that there should be added to it that of organic legislation, requiring different and higher gifts, and wider experience and study, thus threatening to unsettle the balance of the Constitution."
J. Jameson, supra, § 539.
A further reading of Judge Jameson's exhaustive work is enlightening. Judge Jameson asks the question whether, when a state constitution has expressly provided only one means of amendment, some other method may be used. Having examined all American constitutions through his day (1887), he answers:

"If the Constitution authorized its own amendment through the agency of a Convention, without further provisions, it is beyond dispute, that it could not be amended in what we have called the legislative mode. This proposition no one, so far as we are aware, has ever denied. Controversy has been confined to the case in which a Constitution has contained no provision for its own amendment, save in the legislative mode; and it has related to the question whether it could, nevertheless, be amended through the agency of a Convention,a question of greater difficulty, and one of such importance that it deserves a careful consideration, to which we now proceed."
J. Jameson, supra, § 570 (emphasis added). I conclude that the language is appropriate where, as in our case, the Constitution has expressly prescribed the convention as the means of revising the Constitution.
*880 The path seems clear. To uphold the power of the people to chart their own destiny, we must, in this case, say that the constitution proposed by the Legislature has not been properly submitted. In so holding, we do not mean to imply that anyone has acted in bad faith. There has been general public sentiment that a new constitution is needed. However, the people wrote into the Constitution the methods by which constitutional change can be proposed. Our conclusion is that the people did not provide for this method of proposal. We must carry out the will of the people as expressed in the Constitution.
ALMON, SHORES and BEATTY, Justices, dissenting:
Only the people have the legitimate authority to change their form of governmentnot the Governor, not the legislature, and not this Court. We not only dissent; we mourn the passing at the hand of six of our brothers of the most fundamental right upon which our government was founded. Until today in Alabama all political power resided in the people. The majority, by denying the people the fundamental and inherent right to express their will at the ballot box, has stripped them of the sovereignty they have held since this state was founded, by the simple expedience of ignoring the express language of our Constitution:
"Section 2. People source of power.
"That all political power is inherent in the people and all free governments are founded on their authority, and instituted for their benefit; and that, therefore, they have at all times an inalienable and indefeasible right to change their form of government in such manner as they may deem expedient." (Emphasis added.)
The majority denies this fundamental right to the people and has done so by a hypertechnical and legally flawed reading into Sections 284 and 286 restrictions they do not contain. In this, the most important judicial opinion of this Court in this century, the majority by judicial fiat has repudiated the power of our people to change our State Constitution.
Our ancestors, yea, the whole of western civilization, have fought for centuries to establish and preserve majority rule. The majority of this Court rejects the political heritage of a free people, which Section 2 clearly expresses, by elevating mere procedural processes to substantive limitations on the right of the people to choose their own form of constitutional government.
We express no opinion on the merits or demerits of the proposed Constitution, for the only issue before us is whether the people have the right to decide how they shall be governed.
Because of the exigencies of time, this short dissent can do no more than express the alarm of the dissenters at the constitutionally unwarranted position of the majority. A more complete and documented opinion in dissent will follow.
Supplemental dissenting opinion issued November 30, 1983.
BEATTY, Justice (dissenting):
The sole legal question in this case is whether or not the Constitution of 1901 prevents the legislature from presenting, through Act 83-683, a new constitution for a vote of the people of Alabama. The question is not whether this Court favors or disfavors that method. Nor is the question whether or not this Court approves the contents of the proposed constitution.
The majority of this Court has held that §§ 284 through 287 provide the exclusive means for changing the existing constitution. Additionally, the majority has held that the proposed constitution may not be submitted to the people as an amendment for their vote. These positions are constitutionally indefensible.
The first proposition of the majority, which gives exclusivity to §§ 284 through 287, conflicts squarely with Art. I, § 2, which recognizes:
"That all political power is inherent in the people, and all free governments are founded on their authority, and instituted *881 for their benefit; and that, therefore, they have at all times an inalienable and indefeasible right to change their form of government in such manner as they may deem expedient."
This section is the root and branch of our democratic form of government. In plain language it recognizes that our form of state government derives from the inherent power of the people in whom all political power lies and from whom all political power derives. No other sections of the constitution can remove any of this power. To the contrary, constitutional provisions are to be construed as a whole and in light of the entire instrument so as to harmonize with its other provisions. Jefferson County v. Braswell, 407 So.2d 115 (Ala.1981); State Docks Commission v. State ex rel. Cummings, 227 Ala. 414, 150 So. 345 (1933); Bouchelle v. State Highway Commission, 211 Ala. 474, 100 So. 884 (1924).
Under our governmental form, the people elect their representatives to exercise legislative power. In order to appreciate the legislature's relationship to organic law and thus its power derived under it, it is helpful to recall our political history. In Munn v. People of Illinois, 94 U.S. 113, 124, 24 L.Ed. 77 (1876), the United States Supreme Court described our legislative heritage in this manner:
"When the people of the United Colonies separated from Great Britain, they changed the form, but not the substance, of their government. They retained for the purposes of government all the powers of the British Parliament and, through their State Constitutions or other forms of social compact, undertook to give practical effect to such as they deemed necessary for the common good and the security of life and property. All the powers which they retained they committed to their respective States, unless in express terms or by implication reserved to themselves. Subsequently, when it was found necessary to establish a national government for national purposes, a part of the powers of the States and of the people of the States was granted to the United States and the people of the United States. This grant operated as a further limitation upon the powers of the States, so that now the governments of the States possess all the powers of the Parliament of England, except such as have been delegated to the United States or reserved by the people. The reservations by the people are shown in the prohibitions of the constitutions." (Emphasis added.)
This same political authority exists presently. The Alabama legislature, as one of our branches of state government, is the people's representative, possessing all powers not allocated to the other branches of state government. No citation of authority is needed for this universally recognized principle. And "[a]ll that the legislature is not forbidden to do by the organic law, state or federal, it has full power to do. The power of the legislature except as limited by constitutional provisions is as plenary as that of the British Parliament." Hart v. deGraffenried, 388 So.2d 1196, 1198 (Ala. 1980), quoted from County Board of Education v. Taxpayers and Citizens, 276 Ala. 472, 163 So.2d 629 (1964). See also, Riley v. Bradley, 252 Ala. 282, 41 So.2d 641 (1948); State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939); Sheppard v. Dowling, 127 Ala. 1, 28 So. 791 (1900). The analogy of the legislature's powers to those of the British Parliament is fitting, since Parliament has been described as being at once a legislative body and a constitutional convention. 16 Am.Jur.2d Constitutional Law § 9 at 323 (1979). Thus, under the long-standing political theory of Alabama, the legislature has the power to do in the people's name and as their representative whatever is not limited by the constitution, and thus the legislature has the power to propose a new constitution. Indeed, if the constitution did not mention any means of change, then would the document be unchangeable? Obviously, in that circumstance the legislature would have the authority, under the existing governmental framework and as the people's representative, to propose constitutional change. Otherwise, constitutional change would be impossible, *882 short of revolution or a direct meeting of the citizenry. This Court and the highest courts of other jurisdictions have announced that the legislature could call a constitutional convention even though no provision is made in the constitution for altering the document. In City of Bessemer v. Birmingham Electric Co., 252 Ala. 171, 40 So.2d 193 (1949), this Court stated:
"It must be conceded as a general proposition that the legislature has the power to call a constitutional convention even though the constitution does not specifically provide for the calling of a convention by the legislature. [Citations omitted.]" 252 Ala. at 176, 40 So.2d at 197.
If, therefore, the legislature, in the exercise of its plenary power, could call a convention under those circumstances, no logical reason exists to prevent it from likewise proposing a new constitution directly. And this power to initiate any form of constitutional change, without express authority, is ample proof that the legislature has inherent power to propose constitutional change, subject, of course, to whatever procedural limitations exist in the constitution.
The majority rejects the principle that the legislature's power to propose constitutional change is inherent; rather, the majority holds that the legislature has only those powers specifically delegated to it under Art. XVIII, and cites a number of cases which reach this conclusion. See, Gafford v. Pemberton, 409 So.2d 1367 (Ala.1982); Opinion of the Justices No. 148, 263 Ala. 158, 81 So.2d 881 (1955); Opinion of the Justices No. 95, 252 Ala. 205, 40 So.2d 623 (1949); Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231 (1940); Houston County v. Martin, 232 Ala. 511, 169 So. 13 (1936); Johnson v. Craft, 205 Ala. 386, 87 So. 375 (1921); Jones v. McDade, 200 Ala. 230, 75 So. 988 (1917); Collier v. Frierson, 24 Ala. 100 (1854). But in none of those decisions did this Court consider whether the legislature had the power to propose a new constitution. Although the Court did hold in each instance that the amendment procedure outlined in § 284 was mandatory, any language stating that Art. XVIII was the exclusive means of change was dictum. More importantly, the Court's discussion in each case failed completely to disclose any reason why the legislature could not propose a new constitution. Whatever value one may be able to place in such dictum is lost because none of those decisions gave the reasons for such an amazing rule under a constitution containing the provisions of Art. I, § 2, supra.
Moreover, the legislature is precisely the body which is designated in Alabama government as the elected representative of the people. By refusing to recognize that the legislature has the inherent power to propose a new constitution, the majority of this Court announces that, as a practical matter, the people have no power to propose constitutional change outside Art. XVIII. I cannot accept such an absurd conclusion, nor am I prepared to deny the existence of an obvious sovereign right without an express provision in the constitution which directs me to do so. Were I to do so, clearly I would impair the people's right to change fundamental law which is provided in Art. I, § 2. Since the people's right to change the constitution is "inalienable and indefeasible," this Court is forbidden by the constitution to declare that the people do not have the right to consider the legislature's proposal so long as the legislature has complied with other provisions of the constitution. The legislature retains for the people those legislative powers not specifically delegated by the constitution itself. This position is supported by the rule, cited earlier, that meaning and effect must be given to all the language of the constitution. By construing § 286 as the exclusive means of proposing a new constitution, the majority of this Court has effectively declared that portions of § 2 are meaningless. If a constitutional convention is the only practical means of submitting a new constitution to the people, then the people would not have the right to propose change by any other manner (save revolt). Since only the legislature can, as a practical matter, constitute a mechanism for initiating wholesale constitutional change outside of Art. XVIII, it follows that § 2 must be *883 given effect to allow the legislature to propose a new constitution.
Art. XVIII of the Constitution of 1901, governing the amending or altering of the constitution, does not by its language make those provisions the exclusive means for proposing a new constitution.
Section 284 of Art. XVIII, amended by Amendment No. 24, provides as follows:

"Amendments may be proposed to this Constitution by the legislature in the manner following: The proposed amendments shall be read in the house in which they originate on three several days, and, if upon the third reading three-fifths of all the members elected to that house shall vote in favor thereof, the proposed amendments shall be sent to the other house, in which they shall likewise be read on three several days, and if upon the third reading three-fifths of all of the members elected to that house shall vote in favor of the proposed amendments, the legislature shall order an election by the qualified electors of the state upon such proposed amendments, to be held either at the general election next succeeding the session of the legislature at which the amendments are proposed or upon another day appointed by the legislature, not less than three months after the final adjournment of the session of the legislature at which the amendments were proposed. Notice of such election, together with the proposed amendments, shall be given by proclamation of the governor, which shall be published in every county in such manner as the legislature shall direct, for at least four successive weeks next preceding the day appointed for such election. On the day so appointed an election shall be held for the vote of the qualified electors of the state upon the proposed amendments. If such election be held on the day of the general election, the officers of such general election shall open a poll for the vote of the qualified electors upon the proposed amendments; if it be held on a day other than that of the general election, officers for such election shall be appointed; and the election shall be held in all things in accordance with the law governing general elections. In all elections upon such proposed amendments, the votes cast thereat shall be canvassed, tabulated and returns thereof be made to the secretary of state, and counted, in the same manner as in elections for representatives in the legislature; and if it shall thereupon appear that a majority of the qualified electors who voted at such election upon the proposed amendments voted in favor of the same, such amendments shall be valid to all intents and purposes as parts of this Constitution. The result of such election shall be made known by proclamation of the governor. Representation in the legislature shall be based upon population, and such basis of representation shall not be changed by constitutional amendments." (Emphasis added.)
Thus, if one were to ask, "How are amendments to the constitution to be proposed," the answer would be found in the clear language of that section which provides the authority of the legislature, and the mandatory procedure, for proposing amendments. An early decision of this Court established that limitation. See, Collier v. Frierson, 24 Ala. 100 (1854). That case, however, dealt with amendments, not proposed constitutions. Likewise, § 284 of the present constitution deals with amendments, not proposed constitutions. Accordingly, § 284 does not govern the issue.
Section 286 controls the manner of calling a constitutional convention:
"No convention shall hereafter be held for the purpose of altering or amending the Constitution of this state, unless after the legislature by a vote of a majority of all the members elected to each house has passed an act or resolution calling a convention for such purpose the question of convention or no convention shall be first submitted to a vote of all the qualified electors of the state, and approved by a majority of those voting at such election. No act or resolution of the legislature calling a convention for the purpose of altering or amending the Constitution of *884 this state, shall be repealed except upon the vote of a majority of all the members elected to each house at the same session at which such act or resolution was passed; provided, nothing herein contained shall be construed as restricting the jurisdiction and power of the convention, when duly assembled in pursuance of this section, to establish such ordinances and to do and perform such things as to the convention may seem necessary or proper for the purpose of altering, revising, or amending the existing Constitution."
This language does not state that the legislature cannot propose a new constitution. It does not state that a convention is the sole method by which a new constitution may be proposed. It simply states that we cannot have a constitutional convention unless a certain procedure is followed. This Court has no right to restrict the plain meaning of the words used in that section; our duty is to give that language its plain and ordinary meaning. McGee v. Borom, 341 So.2d 141 (Ala.1976). The maxim, "expressio unius est exclusio alterius," or the expression of one thing is the exclusion of another, finds solid application here. Section 286 is expressed in negative terms: "No convention ... unless" followed by a procedure established for approval of a convention by the voters. But nowhere does § 286 preclude a constitutional proposal by the legislature itself. Thus § 286, by establishing the procedure should the convention method be used, clearly excluded any limitation on a like proposal by the legislature itself. Nor is there anything contained in the terms of § 286 which even implies that the legislature cannot propose a new constitution. There is no logical inconsistency between the existence of one method of revision, on the one hand, and a provision which regulates another and different form of revision on the other. Nor is it unreasonable to recognize the existence of another method of revision.
A simple comparison of the language contained in § 284 with that of § 286 clearly shows that § 286 contains no such prohibition on the legislature. In Johnson v. Craft, supra, this Court particularized the restrictive language of § 284 on amendments when it held:
"The design of article 18 is an entire scheme. To propose an amendment without providing for the election would be as much a folly as providing for an election on an amendment not proposed. The plan established by article 18 is the only, the exclusive, plan for amendment. In the opening sentence of this distinct article it is provided that
"`Amendments may be proposed to this Constitution by the Legislature in the manner following [emphasis in original]. * * *'
"The italicized words are definite and restrictive...." (Emphasis added.) 205 Ala. at 402, 87 So. at 389.
Section 286, however, in referring to the convention method, does not contain these restrictive words. And our duty does not allow us to indulge our personal theories of constitutional change by reading into § 286 any such restrictions. Section 286 only restricts the manner in which the legislature must call a convention should it so choose. That section is completely silent on the legislature's power to propose a new constitution. These differences in the language of the two sections confirm the non-exclusive nature of § 286.
Section 286 was included for the first time in the Constitution of 1865. It is curious that the majority, for its interpretation of that section, has relied upon so many authorities from without our state rather than examining our own constitutional development. Historically there was good reason to adopt § 286 in 1865. As Professor Malcolm C. McMillan of Auburn University has explained:
"The Constitution of 1868 was the first one submitted to a vote of the people in Alabama. Its submission was required by the Reconstruction Acts. Since that time all Alabama constitutions have been submitted rather than proclaimed. Popular fear of the powers of a convention became evident early in the [19th] century *885 and increased as the century advanced. In 1861, popular indignation became intense in North Alabama when the secession convention carried Alabama out of the Union without a referendum vote, although North Alabama demanded one and there was great opposition to secession in that section. North Alabama was able to write a proviso into the Constitution of 1865 which declared that no convention should ever be called in Alabama without submitting the question to the people and securing a favorable vote...."
Proposed Constitution of Alabama, Report of the Constitutional Commission 167 (1973). It is clear from this recital of the history of § 286 that it was meant, not to proscribe the legislature's power to propose a constitution, but to assure that the people would have the right to vote upon whether a convention should be held. That historical position, assuring the vote of the people, complements the mandate of Art. I, § 2, which reserves "all political power ... in the people."
The majority characterizes the proposed constitution as a "major overhaul" and concludes from cases decided in other jurisdictions that Act 83-683 is not an amendment "for the purposes of § 284." Just what the "purposes of § 284" are, beyond "a major overhaul," is left unclear. Nevertheless, the majority rejects the appellants' argument that Act 83-683 may be considered an amendment under § 286.
One reading Art. XVIII of the Constitution of 1901 must become aware of its ambiguous and imprecise use of the words "amending," "revising," and "altering." For example, the title of the article is "Mode of Amending the Constitution." No mention is made in the title of "revision." The first line of § 286 of that article states "[n]o convention shall hereafter be held for the purpose of altering or amending the Constitution of this state, unless...." Not until the last line of § 286 is the convention, assembled in accordance with § 286, given the power "to do and perform such things as to the convention may seem necessary or proper for the purpose of altering, revising, or amending the existing Constitution." (Emphasis added.) Section 287, dealing with legislative voting on bills or resolutions "calling a convention for the purposes of altering or amending the Constitution of this state," does not refer to a convention held for the purpose of revising.
What is and what is not an amendment or a revision is not clear, but surely an "amendment" and a "revision" are not the same in the constitutional sense. Our own case of Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231 (1940), furnishes as clear a definition of an "amendment" as we have up to now, and also describes in broad terms what can be accomplished by an amendment, first at 240 Ala. 182, 198 So. 234:
"But the character or nature of an amendment is not prescribed. It may extend to a `change [in the] form of [the] government.' Section 2, Constitution. This may be in any respect, except that it must continue to be a `republican form,' Article IV, section 4, Constitution of the United States; ... nor violate the Fourteenth Amendment of the Constitution of the United States, nor any other provision of it."
And at 240 Ala. 183, 198 So. 235:
"Every proposal which effects a change in the Constitution or adds or takes away from it is an amendment...."
The question of whether the proposal is an "amendment" or a "revision" ought not to be an exercise in either sophistry or hypertechnics.
"It is familiar law in the interpretation of statutes, constitutional amendments and other writings, that the intent of such writing is the substance, and the verbiage is mere form...." In re Opinion of the Justices No. 93, 252 Ala. 194, 198, 41 So.2d 559 (1949).
And whether an "amendment" has been proposed "must be resolved upon its facts and circumstances." Opinion of the Justices, 264 A.2d 342 (Del.1970). That decision furnishes a reasoned analysis of the problem:

*886 "[A] `revision' ... does not come into being by reason of the mere number of changes or the mere fact that the changes concern the entire Constitution. It would be unreasonable to conclude that a large number of amendatory changes accomplishable piecemeal under Section 1, could not be accomplished simultaneously under that Section. Rather, it is the nature and scope of the changes contemplated that determine whether there is a "revision" subject to Section 2 or a series of "amendments" subject to Section 1.
"... In short, to be a "revision" the result must be to effect a change in the basic philosophy which has cast our government in its present form..
"... A constitutional "revision" makes substantial, basic, fundamental changes in the plan of government; it makes extensive alterations in the basic plan and substance of the existing document; it attains objectives and purposes beyond the lines of the present Constitution. A "revision" is more than a mere reorganization, restatement, modernization, abbreviation, consolidation, simplification, or clarification of the existing document." 264 A.2d at 345-346.
It cannot go unnoticed that in the recent past the Constitution of 1901 was "amended" by replacing the entire Art. VI with a new Art. VI, the "Judicial Article." The adoption of the new Art. VI was a radical departure from existing law, much more so than the changes wrought by the proposed constitution. A comparison of the present with the proposed constitution reveals that the proposed constitution shows no marked departure from the present and no fundamental change in the plan of government or in its basic philosophy, and that it attains no objectives beyond the boundaries of the present constitution. In short, the proposed constitution conforms precisely with the definition of an amendment contained in Downs v. City of Birmingham, supra. The majority's attenuated conclusion to the contrary flies in the face of past practice and the reasonable interpretation and application of constitutional language.
As Justice Almon, Justice Shores, and I expressed it in our opinion of November 2, 1983, the people have the inalienable, fundamental right and power to change their existing constitution. That is a right and power they have retained for themselves, not a right and power given to them. Nothing in Art. XVIII circumscribes this right and power. Thus, Article XVIII is not the exclusive means by which the existing constitution may be changed. The majority's regrettable failure to apply this basic tenet of our constitutional law has caused me to question whether our people continue to live under a government of laws.
ALMON and SHORES, JJ., concur.
NOTES
[1] We agree with the trial court that Judge Hill's lone dissenting opinion in Gatewood v. Matthews, 403 S.W.2d 716, 722, is persuasively critical of the majority opinion. We regard the instant case, as Judge Hill did the Gatewood case, as "a case of expediency." 403 S.W.2d at 725. See also Constitutional LawAdoption and Amendment of ConstitutionsLegislature May Disregard Prescribed Revision Procedure As Long As The Proposed Constitution Is Submitted for Popular RatificationGatewood v. Matthews, 81 Harv.L.Rev. 693 (1968) (additional criticism of the majority opinion in Gatewood.)
[2] The Rhode Island Constitution had a provision for the legislative proposal of amendments, but no provision for a constitutional convention.
[3] In an earlier section of his treatise, Jameson discoursed on the relations of the convention to the legislature, giving examples of constitutional changes that the legislature may properly propose:

With proper safeguards, and under adequate checks ... a legislature ... may be allowed to take part in fundamental legislation without endangering the safety of the State. In point of convenience, such an arrangement possesses many claims to acceptance. The calling of a Convention is a measure attended commonly by much delay and expense, and is often compassed by very great difficulties. Reforms would often be foregone rather than resort to means so inconvenient.... [A] doubt [may have] arisen, perhaps, as to the construction to be put on a particular clause; a change may be desired in the qualifications for the suffrage, or in the basis of representation; a branch of the administration [may be] found to be too cumbrous for use; or a new distribution among the agencies of government of their constitutional powers is thought to be advisable to facilitate the transaction of business, or to render public operations more safe or more economical. For amendments of such a stamp, separately considered, the mode by legislative action is well adapted; and it is adapted to no other....
Jameson, Constitutional Conventions, § 540.
[4] The Pennsylvania constitution had no provision for calling a constitutional convention.
[5] The Idaho Constitution had provisions for both the legislative proposal of amendments and the calling of a convention.
[6] As noted by the trial court, Chief Justice McFadden's dissenting opinion in Smith v. Cenarrusa, 93 Idaho 818, 825, 475 P.2d 11, 18, is most persuasive. The decision in Smith was by a 3-2 vote of the court.
[7] The Constitution of 1819 contained no provision for calling a constitutional convention.
[8] While the State argues that the will of the people will be frustrated should the Legislature's revision of the constitution not be presented for their vote, it should be noted that the procedure followed by the Legislature would circumvent the people's right to vote initially on the question of whether to call a constitutional convention, prior to an election regarding the recommendations of such a convention. See § 286, Constitution of 1901. Consequently, it is the Legislature's action that would thwart the sovereign power of the people.